UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, AND DENNIS WILLIAMS, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>MOTOROLA SOLUTIONS, INC., and COLONEL JOHN E. MAWN, JR., Interim Superintendent of the Massachusetts State Police, *in his official capacity.*<br><br>Defendants. | Civil Action No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now come Plaintiffs, Jason Courtemanche, Brett Foresman, Juan Rios, and Dennis Williams, individually and on behalf of a class or classes of similarly situated persons (hereinafter "Plaintiffs"), through their counsel, Christopher R. Batinsey, Esq. of Batinsey Legal P.C., James L. O'Connor, Jr., Esq. of Nickless, Phillips and O'Connor, P.C., and Christopher J. Walton, Esq. of the Law Office of Christopher J. Walton, and hereby file this Complaint and Demand for Jury Trial.

## INTRODUCTION

1. For over a decade, the command hierarchy of the Massachusetts State Police (hereinafter "MSP") enabled, and rank-and-file Troopers carried-out, surreptitious audio and video recordings of persons in Massachusetts. These practices violated the Plaintiffs' civil rights. In hundreds of cases, MSP unlawfully recorded and failed to turn over these recordings to Plaintiffs.

Plaintiffs now bring this civil rights class action lawsuit for monetary and equitable relief arising out of the Defendants' violations of their Constitutional rights. Plaintiffs bring this action against MSP and Motorola Solutions, Inc. (hereinafter "Motorola") to ensure that these acts are never again repeated in the Commonwealth of Massachusetts.

2. MSP used intercepting devices to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of wire or oral communications between themselves and Plaintiffs, in violation of Massachusetts and federal law. MSP failed to obtain warrants as required by law.

3. Motorola willfully procured MSP to commit interceptions or to attempt to commit interceptions of wire or oral communications between MSP and Plaintiffs, in violation of Massachusetts and federal law.

4. In at least one hundred eighty-one known situations, MSP brought criminal charges against the Plaintiffs and failed to produce these secret audio recordings. Plaintiffs were denied constitutional due process prior to the resolution of their cases. While Plaintiffs have now discovered that these secret recordings have existed since approximately 2017, the existence of these secret recordings was not disclosed to Plaintiffs until March of 2023.

5. MSP intentionally circumvented the strict warrant requirements under Massachusetts law to escape legislative and judicial scrutiny.

6. In the cases involving criminal charges, Plaintiffs paid court costs, probation fees, mandatory assessments, fines, restitution, license-reinstatement fees, and other monies, may have performed community service in lieu of payments to the court, and lost property that was seized as a result of the egregious conduct by MSP.

7.      Through this civil action, Plaintiffs seek equitable relief, specifically a declaration that their arrest, detention, imprisonment, the deprivation of their monies, labor associated with their community service, and seizure of their property violates constitutional due process, and injunctive relief.

8.      Through this action, Plaintiffs seek an award of statutory, compensatory, and punitive damages for their deprivation of life, liberty, and property as a result of the outrageous actions of the Defendants.

## JURISDICTION

9.      Jurisdiction is based upon 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

10.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

11.     The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

12.     Venue in the United States District Court for the Commonwealth of Massachusetts, Worcester Division, is proper pursuant to 28 U.S.C. § 1391. Worcester is the judicial district in which a substantial part of the events or omissions giving rise to these claims occurred.

## PARTIES

13.     Plaintiff Jason Courtemanche was at all times relevant hereto a resident of Fitchburg, Worcester County, Massachusetts.

14.     Plaintiff Brett Foresman was at all times relevant hereto a resident of Gardner, Worcester County, Massachusetts.

15. Plaintiff Juan Rios was at all times relevant hereto a resident of Fitchburg, Worcester County, Massachusetts.

16. Plaintiff Dennis Williams was at all times relevant hereto a resident of Fitchburg, Worcester County, Massachusetts.

17. Defendant Motorola Solutions, Inc. was at all times relevant hereto a foreign corporation, registered to do business in the Commonwealth of Massachusetts. The causes of action alleged herein against Motorola arise from its actions directed to or occurring in Massachusetts.

18. Colonel John E. Mawn, Jr. is the Interim Superintendent of the Massachusetts State Police. In his official capacity, Defendant Colonel Mawn, Jr. exercised authority to create and modify policies and procedures, entered into contracts, and supervised the conduct of Division Commanders, including the Massachusetts State Police Gang Unit. Defendant Colonel Mawn, Jr. is sued in his official capacity for declaratory and injunctive relief, and for statutory damages for violation M.G.L. c. 272, § 99.

**FACTUAL BACKGROUND**

19. Since in or about 2017, MSP has been conducting secret audio and video recordings of persons in Massachusetts using intercepting devices.

20. Motorola is a developer, manufacturer, and seller of intercepting devices.

21. These intercepting devices include "10-21" and "bodybug" which, when coupled with a mobile telephone, are capable of transmitting, receiving, amplifying, or recording oral communications.

22. Since approximately 2017, Motorola marketed, manufactured, sold, and otherwise procured intercepting devices to MSP.

23. As part of the procurement of intercepting devices to MSP, Motorola provided an online database to store, review, and share secret recordings of oral communications.

24. This electronic database enabled MSP Troopers who had login credentials to upload and download these secret oral communications at any time.

25. On or about March 15, 2022, MSP secretly recorded an oral communication by Jason Courtemanche using a Motorola intercepting device.

26. Jason Courtemanche never consented to this interception and recording of his oral communication.

27. MSP failed to obtain a warrant for this secret interception and recording.

28. On or about May 17, 2022, MSP secretly recorded an oral communication by Brett Foresman using a Motorola intercepting device.

29. Brett Foresman never consented to this interception and recording of his oral communication.

30. MSP failed to obtain a warrant for this secret interception and recording.

31. On or about May 17, 2022, MSP secretly recorded an oral communication by Juan Rios using a Motorola intercepting device.

32. Juan Rios never consented to this interception and recording of his oral communication.

33. MSP failed to obtain a warrant for this secret interception and recording.

34. On or about April 28, 2022, MSP secretly recorded an oral communication by Dennis Williams using a Motorola intercepting device.

35. Dennis Williams never consented to this interception and recording of his oral communication.

36. MSP failed to obtain a warrant for this secret interception and recording.

37. On or about March 27, 2023, Plaintiffs first learned that Defendants had engaged in this pattern and practice of non-consensual, warrantless, and secret audio and video recordings.

38. MSP then conducted an extensive audit in the spring of 2023 of its use of intercepting devices to record conversations and telephone calls. That audit concluded as follows:

> Many [State Police employees] were unaware of the features of various [intercepting devices], even though they were routinely using these products (10-21, VIP and Mobile Bug);
>
> Many recordings were made outside of legal parameters governing surreptitious audio recordings in Massachusetts;
>
> Poor case management practices were being employed by certain members;
>
> There was a lack of an understanding among certain [State Police employees] about the responsibilities of an Undercover or Case Officer pertaining to evidence identification and production; and
>
> Most [State Police employees] using [intercepting devices] never received formal training on their use.

A true and correct copy of a Powerpoint slide titled "Lessons Learned from the Callyo Audit" contained in the MSP's 2023 audit report is attached hereto as **Exhibit A**.

39. In or about 2017, Motorola met with representatives of MSP concerning its sale of intercepting devices to MSP.

40. At these meetings, MSP informed Motorola that its intercepting devices failed to comply with the Massachusetts two-party consent law, M.G.L. c. 272, § 99.

41. Motorola failed or refused to bring its intercepting devices into compliance with Massachusetts law, and it continued to sell its non-compliant intercepting devices to MSP.

**CLASS ACTION ALLEGATIONS**

42. Plaintiffs are entitled to class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

43. Plaintiffs bring this action on behalf of themselves individually and on behalf of:

- All persons who were audio recorded, without their consent and without a warrant, by the Massachusetts State Police using Motorola intercepting devices; and

- Such other class, classes, or sub-classes as certified by the Court.

44. Plaintiffs do not know the exact number of members of the proposed class(es) since that information is in the control of Defendants. However, Plaintiffs have obtained documents showing that the number of members exceeds one hundred eighty-one.

45. There are questions of law or fact common to the class(es) that predominate over any questions affecting only individual Plaintiffs.

46. Plaintiffs' claims are typical of the claims of the class(es) because all Plaintiffs will be similarly affected by the judgment sought in this action.

47. Plaintiffs will fairly and adequately protect the interest of the class members and have retained counsel competent and experienced in class-action litigation.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. There will be no difficulty in the management of this action as a class-action.

**COUNT I**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(MOTOROLA)**

49. Plaintiffs repeat and reallege all previous allegations.

50. In or about 2017, Motorola and MSP met to discuss Motorola's intercepting devices.

51. In or about 2017, MSP expressed concerns that Motorola's intercepting devices did not comply with Massachusetts law.

52. In or about 2017, MSP asked Motorola to modify its intercepting devices to "not record" by default.

53. Motorola denied MSP's request for modification.

54. Since 2017, MSP contracted with Motorola for use of these intercepting devices, despite each parties' knowledge that these devices did not comply with Massachusetts law.

55. All at times relevant hereto, Plaintiffs were persons for purposes of 42 U.S.C. § 1983.

56. Motorola was acting under the color of state law when it willfully participated in joint action with MSP to deprive Plaintiffs of their constitutional rights.

57. Motorola and MSP agreed to violate M.G.L. c. 272, § 99 (hereinafter the "Massachusetts Wiretap Act").

58. Motorola and MSP agreed to deprive Plaintiffs of their due process rights, which are rights found in the Fifth and Fourteenth Amendments to the U.S. Constitution.

59. As a direct and proximate cause of Motorola's intentional conduct, Plaintiffs were subjected to the deprivation of their rights and were harmed.

60. Plaintiffs are therefore entitled to damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs demand judgement against Motorola, damages, attorney's fees, other litigation disbursements, and such other further relief as is just and equitable.

## COUNT II
### VIOLATION OF MASSACHUSETTS WIRETAP STATUTE, M.G.L. c. 272 § 99
### (MOTOROLA)

61. Plaintiffs repeat and reallege all previous allegations.

62. Motorola marketed, manufactured, sold, and otherwise procured intercepting devices to MSP.

63. As a result of their procurement to MSP, Motorola violated the Massachusetts Wiretap Statute.

64. Plaintiffs are aggrieved persons under the Massachusetts Wiretap Statute whose oral communications were intercepted and whose privacy was violated.

65. Motorola is a person under the Massachusetts Wiretap Statute.

66. Section Q of the Massachusetts Wiretap Statute provides for a civil cause of action against Motorola for its violations of the statute.

WHEREFORE, Plaintiffs demand judgement against Motorola, damages, attorney's fees, costs, interest, other litigation disbursements, and such other further relief as is just and equitable.

## COUNT III
### VIOLATION OF MASSACHUSETTS WIRETAP STATUTE, M.G.L. c. 272 § 99
### (MSP)

67. Plaintiffs repeat and reallege all previous allegations.

68. MSP willfully and secretly intercepted and recorded Plaintiffs' oral communications.

69. MSP's secret interceptions of Plaintiffs' oral communications were done for evidentiary purposes.

70. The Massachusetts Wiretap Statute was enacted to assist law enforcement in the investigation of illegal acts committed by organized crime.

71. The Plaintiffs were not engaged in organized crime activity.

72. MSP's use of intercepting devices against Plaintiffs was not designed to combat organized crime activity.

73. Plaintiffs are aggrieved persons under the Massachusetts Wiretap Statute whose oral communications were intercepted and whose privacy was violated.

74. MSP is a person under the Massachusetts Wiretap Statute.

75. Section Q of the Massachusetts Wiretap Statute provides for a civil cause of action against MSP for its violations of the statute.

76. The Massachusetts Wiretap Statute, paragraph R, requires the attorney general and each district attorney to submit an annual report to the general court stating certain enumerated characteristics of wiretap interceptions and warrants, including the number of interceptions made during the previous year and the number of criminal convictions obtained in trials where interception evidence or evidence derived therefrom was introduced.

77. MSP and each of its Troopers is an "investigative or law enforcement officer" within the meaning of the Massachusetts Wiretap Statute.

78. MSP used an intercepting device to willfully commit an interception, attempted to commit an interception, and/or procured another person to commit an interception.

79. MSP used evidence derived from the secret audio recordings to conduct further investigations into additional persons.

80. The secret audio recordings were made and kept in a central database over which MSP had care, custody, or control for years. Throughout this time, MSP never informed Plaintiffs or their counsel of these secret audio recordings.

81. MSP failed to comply with the warrant requirements of Section F of the Massachusetts Wiretap Statute.

82. MSP's actions prevented the attorney general and/or each district attorney's office from reporting true and accurate statistics to the general court concerning the number of interceptions made in the previous year and the number of criminal convictions obtained in trials where interception evidence or evidence derived therefrom was introduced.

83. MSP violated the Massachusetts Wiretap Statute.

84. As a direct and proximate cause of MSP's unreasonable and unlawful actions, Plaintiffs have suffered and continue to suffer substantial past and future harm.

WHEREFORE, Plaintiffs demand judgment against MSP, damages, attorney's fees, costs, interest, other litigation disbursements, and such other further relief as is just and equitable.

### COUNT IV
### 42 U.S.C. § 1983 - VIOLATION OF DUE PROCESS RIGHTS SECURED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (MSP)

85. Plaintiffs repeat and reallege all previous allegations.

86. MSP is the law enforcement agency for the Commonwealth of Massachusetts.

87. Colonel John E. Mawn, Jr. is the "policymaker" with respect to Defendant MSP, as a law enforcement agency.

88. Liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly.

89. If an authorized policymaker approves of a subordinate's decision and the basis for it, such ratification would be chargeable to MSP under *Monell*.

90. All at times relevant hereto, Plaintiffs were persons for purposes of 42 U.S.C. § 1983.

91. At all times relevant hereto, MSP was acting under the color of state law when it violated Plaintiffs' constitutional rights, secured by the Fifth and Fourteenth Amendments, to both procedural and substantive due process.

92. MSP had a policy, pattern, practice, and/or procedure of using non-compliant intercepting devices.

93. Final policymaking officials in the MSP failed to end the practice over many years.

94. MSP's secret recordings of Plaintiffs' oral communications were done in accordance with either a policy, pattern, practice, and/or procedure of the MSP.

95. MSP's practice was so well-settled and widespread that its violations occurred throughout the Commonwealth.

96. MSP's failure to produce these secret recordings to Plaintiffs deprived them of exculpatory evidence at trial.

97. MSP unjustifiably and unlawfully violated Plaintiffs' rights to be presented with evidence against them, confront their accusers, and enjoy a fair and impartial trial, due to MSP's customs, patterns, practices, and/or procedures.

98. MSP's failure to produce these secret recordings was the cause of and the moving force behind the deprivation of Plaintiffs' civil rights.

99. When MSP Troopers inevitably violated Plaintiffs' rights, MSP would ratify their unconstitutional acts and assist in covering up the Troopers' bad actions by failing to produce these secret oral communications.

100. As evidence of the above-stated custom, pattern, practice, and/or procedure, MSP and Motorola maintained a database of these secret oral communications, the Defendants knew how to share these secret oral communications, and MSP had policies on paper requiring these secret oral communications be shared. Despite this, MSP failed to produce these secret recordings to Plaintiffs, as required, for years.

101. When these secret oral communications were created by MSP, no person or law enforcement officer was in imminent danger and no exigent circumstances existed.

102. MSP failed to train its employees adequately.

103. MSP provided little or no training on the use of Motorola's intercepting devices.

104. MSP's minimal training was a deliberate or conscious choice of the agency.

105. The need for training of Motorola's intercepting devices was obvious.

106. MSP's failure to train its officers caused the deprivation of Plaintiffs' constitutional due process rights.

107. MSP knew or should have known that Motorola intercepting devices failed to comply with the Massachusetts Wiretap Statute.

108. MSP asked Motorola to make their intercepting devices "idiot proof", which meant that the intercepting devices should not record by default.

109. Motorola ignored MSP's requests.

110.     MSP knew of this recording issue and were deliberately indifferent to the secret recordings that were made by these intercepting devices.

111.     As a direct and proximate result of MSP's customs, patterns, practices, and/or procedures as stated herein, Plaintiff's due process rights guaranteed to them by the Fifth and Fourteenth Amendments to the Unites States Constitution were violated.

112.     As a direct and proximate cause of MSP's unreasonable and unlawful actions, Plaintiffs have suffered and continue to suffer substantial past and future harm.

WHEREFORE, Plaintiffs demand judgment against MSP, injunctive relief, declaratory relief pursuant to 28 U.S.C. § 2201, and such other further relief as is just and equitable.

## COUNT V
### 42 U.S.C. § 1983 - VIOLATION OF THE RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES SECURED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (MSP)

113.     Plaintiffs repeat and reallege all previous allegations.

114.     MSP is the law enforcement agency for the Commonwealth of Massachusetts.

115.     Colonel John E. Mawn, Jr. is the "policymaker" with respect to Defendant MSP, as a law enforcement agency.

116.     Liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly.

117.     If an authorized policymaker approves of a subordinate's decision and the basis for it, such ratification would be chargeable to MSP under *Monell*.

118. All at times relevant hereto, Plaintiffs were persons for purposes of 42 U.S.C. § 1983.

119. At all times relevant hereto, MSP was acting under the color of state law when it violated Plaintiffs' constitutional rights, secured by the Fourth Amendment, to be free of unreasonable searches and seizures.

120. MSP had a custom, pattern, practice, and/or procedure of using the Commonwealth's money to solicit or induce persons to purchase alleged controlled substances. The money MSP provided included a so-called "tip" for the person procuring the controlled substance. This "tip" was for the person to keep.

121. MSP's "tips" were not disclosed to Plaintiffs on police reports.

122. Prior to purchasing the alleged controlled substances MSP had a custom, pattern, practice, and/or procedure of requiring the person receiving the "tip" to leave their cellphone with the MSP Trooper.

123. When the person receiving the "tip" was out of the MSP Troopers' sight, MSP had a custom, pattern, practice, and/or procedure of illegally and unreasonably seizing and searching the persons' cellphones looking for names and/or telephone numbers of contacts.

124. MSP had a custom, pattern, practice, and/or procedure of then contacting these new people and pretending they received their information from the original person whose phone MSP illegally and unreasonably searched.

125. MSP had a custom, pattern, practice, and/or procedure of using these illegally and unreasonably obtained contacts to threaten, intimidate, or coerce them to purchase alleged controlled substances.

126. MSP's actions were not taken in good-faith and were in violation of clearly established law.

127. MSP's actions were unnecessary, unreasonable, unlawful, and unjustified.

128. As a direct and proximate result of MSP's customs, patterns, practices, and/or procedures as stated herein, Plaintiff's rights guaranteed to them by the Fourth Amendment to the Unites States Constitution to be free of unreasonable searches and seizures were violated.

129. As a direct and proximate cause of MSP's unreasonable and unlawful actions, Plaintiffs have suffered and continue to suffer substantial past and future harm.

WHEREFORE, Plaintiffs demand judgment against MSP, injunctive relief, declaratory relief pursuant to 28 U.S.C. § 2201, and such other further relief as is just and equitable.

## **PRAYERS FOR RELIEF**

Plaintiffs, on behalf of themselves, and on behalf of all others similarly situated, hereby pray that this Honorable Court:

1. Enter judgment for Plaintiffs on all counts;

2. Certify the case as a class action pursuant to Fed. R. Civ. P. 23;

3. Award Plaintiffs all damages recoverable by law, including compensatory and punitive damages;

4. Award Plaintiffs their attorneys' fees, costs, and interest;

5. Order injunctive relief;

6. Order declaratory relief;

7. Order an appointment of Special Master; and

8. Grant such other and further relief as is just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, and DENNIS WILLIAMS, ON BEHALF OF THEMSELVES, AND ALL OTHERS SIMILARLY SITUATED,

        by their attorneys,

        /s/ Christopher R. Batinsey
        Christopher R. Batinsey, Esq.
        BBO# 688586

        Batinsey Legal P.C.
        344 Main St
        Suite 14
        Fitchburg, MA 01420
        (617) 682-0254
        cbatinsey@batinseylegal.com

        /s/ James O'Connor, Jr.
        James O'Connor, Jr., Esq.
        BBO# 563450

        Nickless, Phillips and O'Connor, P.C.
        780 Main St
        PO Box 2101
        Fitchburg, MA 01420
        (978) 342-4590
        joconnor@npolegal.com

        /s/ Christopher J. Walton
        Christopher J. Walton, Esq.
        BBO# 639819

        Law Office of Christopher J. Walton
        56 Elm St
        Fitchburg, MA 01420
        (978) 342-9100
        attycjw@aol.com

# EXHIBIT A

# Lessons Learned from the Callyo Audit

- The Department conducted an extensive audit of its use of Callyo products in the Spring of 2023.

- Several lessons were learned from this audit, including:

  - Many Department members were unaware of the features of various Callyo products, even though they were routinely using these products (10-21, VIP and Mobile Bug).

  - Callyo products do not always make it clear to the user whether an event is being recorded or merely livestreamed.

  - Many recordings were made outside of legal parameters governing surreptitious audio recordings in Massachusetts.

  - Poor case management practices were being employed by certain members.

  - There was a lack of an understanding among certain members about the responsibilities of an Undercover or Case Officer pertaining to evidence identification and production.

  - Most members of the Department using Callyo products never received formal training on their use.

- Overall, the results of the Callyo audit revealed the need for the Department to provide formal training on the use of Callyo products and promulgate a policy on covert investigatory recordings.