UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, AND DENNIS WILLIAMS, *on behalf of themselves and all others similarly situated,*

Plaintiffs,

v.

MOTOROLA SOLUTIONS, INC., CALLYO 2009 CORP., SHI INTERNATIONAL CORP., and COLONEL JOHN E. MAWN, JR., Interim Superintendent of the Massachusetts State Police, *in his official capacity.*

Defendants.

Civil Action No. 4:24-cv-40030-MRG

**PLAINTIFFS REQUEST ORAL ARGUMENT**

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED BY DEFENDANTS MOTOROLA SOLUTIONS, INC. AND CALLYO 2009 CORP.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

STANDARD ON A MOTION TO DISMISS .......... 1

ARGUMENT .......... 1

I. Plaintiffs have standing to sue in this Court. .......... 1

II. Plaintiffs have adequately pled a conspiracy claim under 42 U.S.C. § 1983. .......... 2

III. Plaintiffs have adequately pled that Motorola violated M.G.L. c. 272, § 99 .......... 10

IV. Plaintiffs have adequately pled a claim against Motorola under M.G.L. Ch. 93A. .......... 11

V. Plaintiffs have adequately pled their breach of warranty claims against Motorola. .......... 19

CONCLUSION .......... 20

CERTIFICATE OF SERVICE .......... 21

# TABLE OF AUTHORITIES

## Cases

*Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.*,
986 F.2d 605 (1st Cir. 1993) ..... 12

*Alianza Ams. v. DeSantis*,
2024 U.S. Dist. LEXIS 59893 (D. Mass. Mar. 29, 2024) ..... 8

*Arthur D. Little, Inc. v. Dooyang Corp.*,
147 F.3d 47 (1st Cir. 1998) ..... 12

*Back v. Wickes Corp.*,
375 Mass. 633 (1978) ..... 20

*Board of Regents v. Roth*,
408 U.S. 564 (1972) ..... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 1, 2, 13

*Blue Cross & Blue Shield v. AstraZeneca Pharm. LP (In re Pharm. Indus. Average Wholesale Price Litig.)*,
582 F.3d 156 (1st Cir. 2009) ..... 13

*Brady v. Maryland*,
373 U.S. 83 (1963) ..... 7

*Broderick v. Talbot*,
2012 U.S. Dist. LEXIS 134341 (D. Mass. Sep. 20, 2012) ..... 3

*Chavez v. Zachowski*,
2013 U.S. Dist. LEXIS 163008 (D. Mass. Nov. 15, 2013) ..... 9

*Ciardi v. F. Hoffmann La Roche, Ltd.*,
436 Mass. 53 (2002) ..... 14

*Commonwealth v. Du*,
103 Mass. App. Ct. 469 (2023) ..... 10

*Cruz-Arce v. Mgmt. Admin. Servs. Corp.*,
19 F.4th 538 (1st Cir. 2021) ..... 3, 4, 6

*Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*,
958 F.3d 38 (1st Cir. 2020) ..... 2

*Doe v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) ... 19

*Earle v. Benoit*,
850 F.2d 836 (1st Cir. 1988) ... 8

*Exum v. Stryker Corp.*,
2013 U.S. Dist. LEXIS 99732 (D. Mass. July 17, 2013) ... 19

*Felix de Santana v. Velez*,
956 F.2d 16 (1st Cir. 1992) ... 9

*First Enters. v. Cooper*,
425 Mass. 344 (1997) ... 14

*Fusion Learning, Inc. v. Andover Sch. Comm.*,
609 F. Supp. 3d 5 (D. Mass. 2022) ... 7

*García-Catalán v. United States*,
734 F.3d 100 (1st Cir. 2013) ... 1

*Gottlieb v. Amica Mut. Ins. Co.*,
57 F.4th 1 (1st Cir. 2022) ... 13

*Haddad v. Gonzalez*,
410 Mass. 855 (1991) ... 17

*Haglund v. Philip Morris Inc.*,
446 Mass. 741 (2006) ... 20

*Harrington v. CACV of Colo., LLC*,
508 F. Supp. 2d 128 (D. Mass. 2007) ... 13

*Harron v. Town of Franklin*,
660 F.3d 531 (1st Cir. 2011) ... 7

*Hatch v. Trail King Indus. Inc.*,
656 F.3d 59 (1st Cir. 2011) ... 19

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016) ... 2

*Int'l Ass'n of Fire Fighters v. Nat'l Fire Prot. Ass'n, Inc.*,
2024 Mass. Super. LEXIS 28 (Mar. 5, 2024) ... 15

*Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*,
330 F. Supp. 3d 616 (D. Mass. 2018) .......... 19

*Jarvis v. Vill. Gun Shop, Inc.*,
805 F.3d 1 (1st Cir. 2015) .......... 3

*Kelleher v. Truran*,
2009 U.S. Dist. LEXIS 148000 (D. Mass. July 10, 2009) .......... 13

*King v. Wells Fargo Bank, N.A.*,
2019 U.S. Dist. LEXIS 132151 (D. Mass. Aug. 7, 2019) .......... 19

*Lee v. Conagra Brands, Inc.*,
958 F.3d 70 (1st Cir. 2020) .......... 13

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) .......... 3

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
923 F.3d 209 (1st Cir. 2019) .......... 2

*Pagan v. Calderon*,
448 F.3d 16 (1st Cir. 2006) .......... 2

*Pearson v. Callahan*,
555 U.S. 223 (2009) .......... 8

*Penney v. First Nat'l Bank*,
385 Mass. 715 (1982) .......... 13

*Perez-Acevedo v. Rivero-Cubano*,
520 F.3d 26 (1st Cir. 2008) .......... 1

*Perkins v. Londonderry Basketball Club*,
196 F.3d 13 (1st Cir. 1999) .......... 3, 4, 6

*Pine v. Rust*,
404 Mass. 411 (1989) .......... 11

*PMP Assocs. v. Globe Newspaper Co.*,
366 Mass. 593 (1975) .......... 12

*Ryan v. Greif, Inc.*,
2023 U.S. Dist. LEXIS 227380 (D. Mass. Dec. 21, 2023) .......... 14

*Santiago v. Puerto Rico*,
655 F.3d 61 (1st Cir. 2011) ... 3

*Sarvis v. Casey*,
2023 U.S. Dist. LEXIS 122270 (D. Mass. July 17, 2023) ... 13

*Sepulveda v. UMass Corr. Health Care*,
160 F. Supp. 3d 371 (D. Mass. 2016) ... 8

*Sherkat v. New Eng. Vill., Inc.*,
2015 U.S. Dist. LEXIS 164379 (D. Mass. Dec. 8, 2015) ... 6

*Slotnick v. Staviskey*,
560 F.2d 31 (1st Cir. 1977) ... 8

*Soto v. Bushmaster Firearms Int'l, LLC*,
202 A.3d 262 (Conn. 2019) ... 16, 17

*Taupier v. Davol, Inc.*,
490 F. Supp. 3d 430 (D. Mass. 2020) ... 20

*Tomasella v. Nestlé USA, Inc.*,
962 F.3d 60 (1st Cir. 2020) ... 12

*Tyler v. Michaels Stores, Inc.*,
464 Mass. 492 (2013) ... 18

*UBS Financial Services, Inc. v. Aliberti*,
483 Mass. 396 (2019) ... 14

*United States ex rel. Hutcheson v. Blackstone Med., Inc.*,
647 F.3d 377 (1st Cir. 2011) ... 1

*United States v. Bagley*,
473 U.S. 667 (1985) ... 7

*Varney v. R.J. Reynolds Tobacco Co.*,
118 F. Supp. 2d 63 (D. Mass. 2000) ... 19

*Walsh v. TelTech Sys.*,
821 F.3d 155 (1st Cir. 2016) ... 13, 15, 18

**Statutes**

42 U.S.C. § 1983 .......... 3, 9

M.G.L. c. 106, § 2-313 .......... 20

M.G.L. c. 106, § 2-318 .......... 19

M.G.L. c. 214 .......... 18

M.G.L. c. 272, § 99 .......... 10, 15, 17, 18

M.G.L. c. 93, § 105 .......... 18

M.G.L. c. 93A .......... 11, 12, 13, 14, 15, 16

**Other Authorities**

Black's Law Dictionary 1401 (10th ed. 2014) .......... 11

U.S. Const. amend. XIV .......... 6

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1, 3

Fed. R. Civ. P. 9(b) .......... 13

Mass. R. Crim. P. 14 .......... 8

**Regulations**

940 C.M.R. § 3.16 .......... 12

Plaintiffs oppose Motorola Solutions, Inc.'s and Callyo 2009 Corp.'s (together, "Motorola") motion to dismiss ("Motion") the First Amended Complaint ("FAC") (DE 30).

**STANDARD ON A MOTION TO DISMISS**

Since a motion to dismiss pursuant to Rule 12(b)(6) "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citation omitted). As a result, this Court "must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff." *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 384 (1st Cir. 2011). A Court may only dismiss a complaint or a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. "This context-specific inquiry does not demand a high degree of factual specificity." *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (citation omitted).

**ARGUMENT**[1]

**I. Plaintiffs have standing to sue in this Court.**

Dismissal under Rule 12(b)(1) should be denied. The three requirements for Article III standing are: an injury in fact which is "concrete and particularized" and "actual or imminent, not

[1] Motorola's self-serving statements in its introduction that it "does not, and cannot, direct or monitor how its law enforcement customers use the Products" are untrue, pure supposition, and/or have no place in a Rule 12(b)(6) motion to dismiss. (Motion at 1).

conjectural or hypothetical," that the injury is "fairly traceable to the challenged action," and that it is "likely ... that the injury will be redressed by a favorable decision." *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 221 (1st Cir. 2019) (internal quotations omitted). Plaintiffs meet this standard.

Motorola's reliance on *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38 (1st Cir. 2020), is misplaced. In *Dantzler*, the court found the complaint lacked sufficient "factual matter" to establish, among other things, causation. *Id.* at 48. Here, the FAC contains sufficient factual allegations of causation. The Plaintiffs' injuries were realized, actual, fairly traceable to the conspiracy between MSP and Motorola, and will be redressed by a favorable decision of this Court. (FAC ¶¶ 50-55; 65-68; 74-75); *see also supra* pp. 4-5.

It is puzzling why Defendants rely on *Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016), and *Pagan v. Calderon*, 448 F.3d 16 (1st Cir. 2006). As Plaintiffs demonstrate, their FAC meets the *Twombly* standard for causation and redressability, unlike the "impuissant" claims in *Hochendoner*, 823 F.3d at 730. Motorola misstates, mischaracterizes, and ignores Plaintiffs' claims against them. Plaintiffs were injured because Motorola engaged in a years-long conspiracy with the MSP to knowingly violate Plaintiffs' constitutional rights, to violate the Wiretap Statute, and to engage in unfair or deceptive acts or practices in Massachusetts. This is sufficient.

## II. <u>Plaintiffs have adequately pled a conspiracy claim under 42 U.S.C. § 1983</u>.

Motorola conspired with the Massachusetts State Police ("MSP") to illegally intercept Plaintiffs' oral communications and then stored the recordings on Motorola's servers, violating Plaintiff's constitutional due process rights. Motorola's arguments in favor of dismissal lack merit.

First, Motorola claims that the FAC does not sufficiently allege that Motorola was acting under color of state law when it coordinated with the MSP to illegally record and store Plaintiffs'

oral communications. (Motion at 5-7). Section 1983 applies to private entities like Motorola when their conduct can be "fairly attributable to the State," thereby constituting state action and engaging the gears of the statute. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Critically, however, the determination of whether a private entity's actions are so intertwined with the government's so as to have been taken under color of state law "demands a fact-intensive and context-specific inquiry" that is generally inappropriate under a Rule 12(b)(6) motion. *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 544 (1st Cir. 2021); *see also Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 (1st Cir. 1999) (holding that district courts must be "mindful of the fact-sensitive nature of the [state action] inquiry"). This is evident by the cases cited by Motorola, many of which were decided on summary judgment and not on a motion to dismiss, rendering them inapplicable here. *See, e.g.*, *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 7-8 (1st Cir. 2015) (reviewing district court's grant of summary judgment in favor of defendant); *Santiago v. Puerto Rico*, 655 F.3d 61, 67 (1st Cir. 2011) (same); *Broderick v. Talbot*, 2012 U.S. Dist. LEXIS 134341, at *1-3 (D. Mass. Sep. 20, 2012) (same).

The First Circuit has adopted three separate tests for analyzing whether a private entity is acting under color of state law: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. *Cruz-Arce*, 19 F.4th at 544. However, it has also cautioned that "[b]ecause some constitutionally assured rights (such as the right to due process) may be manifested in a nearly infinite variety of applications," courts must "resist[] attempts to define with granular precision the universe of circumstances in which a private party may be considered to be acting under color of state law" and should instead examine each complaint independently, consistent with the "need for individualized consideration" that every case merits. *Id.* Moreover, "[t]o defeat a motion to dismiss predicated on the 'under color of state law' requirement, a plaintiff

need not … intone some catechism of magic words to describe the relationship between the private party and the state." *Id.* Instead, "the allegations in the complaint, supplemented with reasonable inferences therefrom and matters susceptible to judicial notice, must comprise a factual predicate sufficient to render it plausible that one of these tests can be satisfied." *Id.*

Here, Plaintiffs pled sufficient facts to plausibly support the conclusion that the nexus/joint action test has been satisfied. Under that test, "a private party may be considered a state actor if it and the state have entered into so symbiotic a relationship that they have become joint participants in the challenged conduct." *Id.* This analysis hinges on "whether private actors have aligned themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of the Fourteenth Amendment." *Perkins*, 196 F.3d at 18 (citation omitted). This symbiosis "is predicated on interdependence and joint participation," and concentrates on "the nature of the overall relationship between the State and the private entity." *Id.* at 21. While courts should focus on "the totality of the circumstances" of the joint private/state activity, some of the non-exclusive factors that courts have utilized in undertaking this analysis include: (a) whether the private actor is independent from the state actor in conducting the relevant conduct at issue in the complaint, (b) whether the private actor uses public facilities or resources in that activity, and (c) whether and to what extent there are profits shared between the private actor and the state relative to the activity at issue. *Id.*

Here, Plaintiffs more than satisfy this nexus/joint action test by including numerous allegations showing the symbiotic relationship between Motorola and the MSP. Starting in 2017, Motorola marketed, manufactured, sold, and otherwise procured these intercepting devices to MSP for the express purpose of surreptitiously recording the oral communications of persons in Massachusetts. (FAC ¶¶ 28-29). As part of this contractual relationship between Motorola and

MSP, Motorola also provided an online database where MSP's secret and illicit recordings made with Motorola's products could be stored, reviewed, reproduced, and shared. (*Id.* at ¶¶ 31-32).

MSP informed Motorola that its intercepting devices failed to comply with Massachusetts' wiretap laws. (*Id.* at 50-51, 65-66). Despite this express warning, Motorola refused to bring its products in compliance with the law and sold the intercepting devices to MSP even though Motorola knew their use by MSP (as manufactured) would violate the wiretap statute. (*Id.* at ¶ 52, 67-68). Indeed, Motorola marketed the products to MSP in a way that expressly encouraged MSP's violation of privacy laws, boasting that its intercepting devices were "hidden in plain sight," made "body wires a thing of the past," and included a feature that disabled "video preview while streaming to avoid detection" without obtaining the recorded party's consent. (*Id.* at ¶¶ 79-81).

After the MSP inevitably created illegal recordings using Motorola's products (as Motorola knew or should have known would occur), Motorola hosted those illegal recordings on its own cloud-based servers, where they presumably remain to this day. (*Id.* at ¶ 53). Motorola recognized the joint and symbiotic nature of this cloud-based server system, assuring MSP that it would allow MSP troopers to "go live with the comfort of knowing that videos are stored in the government cloud." (*Id.* at 74). Moreover, as part of the parties' agreement, MSP granted Motorola a royalty-free, worldwide, non-exclusive license allowing Motorola to use these illicit oral communications housed on Motorola's servers for its own financial gain, permitting Motorola to review, reproduce, analyze, and create derivate works and products based on such illegal recordings. (*Id.* at ¶ 54). Even though Motorola was on notice at the outset that these intercepting devices violated Massachusetts law, Motorola nonetheless expressly warranted that it would comply with all applicable laws, including privacy laws, in connection with the sale and use of its products by MSP, knowing such a warranty was doomed from the outset. (*Id.* at ¶ 55).

Contrary to Motorola's arguments, these facts as pled by Plaintiffs rise far above mere "bare allegations" of joint activity between Motorola and MSP. (Motion at 6). More than just pleading the existence of a contract and regular contact between Motorola and the MSP, Plaintiffs detail how the database and royalty-free license agreement further intertwined the parties. Using the factors set out in *Perkins*, *supra*, Plaintiffs sufficiently allege that Motorola has acted interdependently with the MSP in creating, storing, and using the illegal recordings at issue, that Motorola has established a joint private/public cloud database storing these recordings to which both parties have access, and Motorola has been generously licensed by the state to use these recordings to market, create, and advertise existing and additional product lines, producing direct profit to Motorola from the state's illegal activity. *Contra Sherkat v. New Eng. Vill., Inc.*, 2015 U.S. Dist. LEXIS 164379 (D. Mass. Dec. 8, 2015) (no state action found where only allegation was that private entity received some public funds through a government contract, and there were no allegations of significant interdependence, profit sharing or use of public facilities by the private entity). Plaintiffs have pled sufficient facts linking Motorola with the MSP to show they acted under color of state law to deprive Plaintiffs' constitutional rights. *Cruz-Arce*, 19 F.4th at 544.

Motorola's argument that Plaintiffs fail to sufficiently allege a violation of their constitutional due process rights is unavailing. (Motion at 7-9).[2] The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This prohibition guards against "the arbitrary exercise of the powers of government." *Harron v. Town of Franklin*, 660 F.3d 531, 535

[2] Plaintiffs withdraw any claim that Count I is based on a violation of the Fifth Amendment. They clarify that their Section 1983 conspiracy claim against Motorola is based on defendants' unconstitutional deprivation of Plaintiffs' liberty and property interests, in violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment.

(1st Cir. 2011) (citation omitted). All that is necessary, therefore, is for Plaintiffs to allege that they were "deprived of [their] liberty and property interests" through defendants' joint, conspiratorial actions. *Fusion Learning, Inc. v. Andover Sch. Comm.*, 609 F. Supp. 3d 5, 14 (D. Mass. 2022).

Plaintiffs have pled a deprivation of their life, liberty, and property. The surreptitious and illegal recordings between MSP and Plaintiffs, which were illegally created using Motorola's products and stored on its servers, were not revealed to Plaintiffs in their criminal prosecutions, a violation of Plaintiffs' procedural due process rights. (FAC at ¶¶ 4-5). Plaintiffs suffered losses of liberty and property. (*Id.* at ¶¶ 6-8, 33, 75, and 88). Plaintiffs seek a declaration that their losses of liberty and property violates constitutional due process. *Id.* Plaintiffs' numerous factual allegations satisfy the minimal pleading requirements.

The Supreme Court has defined the "liberty interest" protected by the Fourteenth Amendment to be "broad indeed," and encompassing not only "freedom from bodily restraint," but also the right to "enjoy those privileges long recognized … as essential to the orderly pursuit of happiness by free men." *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972) (citation omitted).[3] Plaintiffs have alleged they lost both liberty and property due to Motorola's actions in concert with the MSP. *See, e.g.*, *Brady v. Maryland,* 373 U.S. 83 (1963) (holding that withholding evidence in criminal prosecutions violates the Fourteenth Amendment's grant of procedural due process); *United States v. Bagley*, 473 U.S. 667, 676-77 (1985) (impeachment material falls within *Brady* rule). Motorola gets it all wrong that no deprivation occurred because the recordings were not used in Plaintiffs' criminal proceedings. (Motion at 8). It is this very improper withholding from Plaintiffs' attorneys of evidence which constitutes the *Brady* violations here. *See* Mass. R. Crim.

---

[3] Curiously, Motorola completely ignores this protected liberty interest in its Opposition, focusing entirely on the property interest instead. This alone is a basis to reject Motorola's argument.

P. 14 (prosecution must disclose from "persons under the prosecutor's direction and control … [a]ny written or recorded statements … made by the [Plaintiffs]").

Motorola claims that the Plaintiffs do not "suggest" that it agreed "tacitly or expressly" with MSP. (*Id.* at 10). This claim is erroneous. Motorola and MSP have a contract. The "conspiratorial agreement" is the licensing of the illegal recordings and contract. (FAC at ¶ 54). Motorola's cases are inapposite because, unlike here, the plaintiffs in those cases either failed to allege any facts at all regarding an agreement or included only conclusory allegations. *See, e.g.*, *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977) (complaint alleged only "conclusory allegations of conspiracy" with no reference to any material facts); *Sepulveda v. UMass Corr. Health Care*, 160 F. Supp. 3d 371, 388 (D. Mass. 2016) (complaint contained "nothing" to suggest an agreement); *compare with Earle v. Benoit*, 850 F.2d 836, 843 (1st Cir. 1988) (courts should reject dismissal unless the complaint is completely absent of allegations of an agreement because "the agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof [and] more often than not such an agreement must be inferred from all the circumstances").

Motorola's qualified immunity argument is meritless. (Motion at 10-11). "[Q]ualified immunity is not available in cases, such as this one, 'where injunctive relief is sought instead of or in addition to damages.'" *Alianza Ams. v. DeSantis*, 2024 U.S. Dist. LEXIS 59893, at *73 (D. Mass. Mar. 29, 2024), quoting *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). Plaintiffs seek injunctive relief, and therefore Motorola is not entitled to qualified immunity as a matter of law. (FAC at ¶ 7, wherefore clause).

In addition, "as a general rule, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion." *Alianza*, 2024 U.S. Dist. LEXIS 59893 at *73, (internal quotations omitted). Because qualified immunity is an affirmative defense that the defendant must plead in

its answer, the defendant has the burden of proof and persuasion. *Chavez v. Zachowski*, 2013 U.S. Dist. LEXIS 163008, at *9 (D. Mass. Nov. 15, 2013) (seeking qualified immunity determination in motion to dismiss was "premature" and must wait until a court can analyze the affirmative defense "based on a fully developed factual record").

Motorola is also wrong in claiming that private actors involved in Section 1983 conspiracy claims are always entitled to qualified immunity. (Motion at 10). On the contrary, the First Circuit has bestowed qualified immunity on private actors in only limited situations where the private entity was coerced into action by the state instead of acting for its own financial gain. *Felix de Santana v. Velez*, 956 F.2d 16, 20 (1st Cir. 1992) (noting that qualified immunity to private actors in this Circuit is limited to situations where the private entity "acted at the command of the state rather than out of self-interest"). In *Felix de Santana*, the defendants were not entitled to qualified immunity where they "are alleged to have voluntarily engaged in illegal activities in the advancement of their own self-interests," and the "public policy reasons behind our extension of qualified immunity" in other cases was lacking "because of the potential abuses and consequences inherent in criminal prosecutions," like here. *Id.* Noting that private persons "usually are not subject to the same public scrutiny as public officials, which may serve to curtail improper behavior" and therefore less entitled to immunity, the First Circuit observed that wrongfully convicted plaintiffs "face not only the deprivation of their liberty, but also damage to their reputations as well as loss of property interests," and that in such cases the court saw "no reason to extend the right to claim qualified immunity to these defendants" alleged to have contributed to plaintiffs' deprivation of rights through the criminal process. *Id.* The same outcome should occur here. At the very least, however, this analysis is extremely fact-intensive and is inappropriate for consideration on a motion to dismiss.

## III. Plaintiffs have adequately pled that Motorola violated M.G.L. c. 272, § 99.

Motorola improperly misrepresents the statutory language of M.G.L. c. 272, § 99 (the "Wiretap Act") in its attempt to avoid its reach. The Wiretap Act allows a private cause of action against any person (not just law enforcement) who "intercepts, discloses or uses" recordings of oral communications without all parties' consent. The statute defines "interception" as meaning "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device." M.G.L. c. 272, § 99(B)(4). In addition, a person commits a prohibited "interception" where that person "willfully commits an interception, attempts to commit an interception, or procures any other person to commit an interception or to attempt to commit an interception of any wire or oral communication." *Id.* at § 99(C)(1). Any person whose communications were illegally intercepted, disclosed or used under the statute "shall have a civil cause of action against any person who so intercepts, discloses or uses such communications or who so violates his personal, property or privacy interest." *Id.* at § 99(Q).

Plaintiffs allege that Motorola has improperly "intercepted" Plaintiffs communications. Motorola sold the intercepting devices to the MSP, and hosted the recordings on their servers. (FAC at ¶¶ 52, 54). Motorola specifically declined to modify its intercepting devices to comply with the Wiretap Act. (FAC at ¶¶ 50-52). Indeed, the Massachusetts Appeals Court has already determined that the use of these very Callyo products by Massachusetts law enforcement officers violated the Wiretap Act. *Commonwealth v. Du*, 103 Mass. App. Ct. 469, 479 (2023). Plaintiffs further allege that through such actions and omissions, and in concert with the MSP through the parties' contract, Motorola has "procured" the MSP's interception of Plaintiffs' communications. (FAC at ¶¶ 127-28). *See Du*, 103 Mass. App. Ct. at 479 (listing four forms of illegal "interception"

which included the act of "storing of the audio-visual recording in the cloud"); *See also* Black's Law Dictionary 1401 (10th ed. 2014) (defining "procure" to mean "[t]o achieve or bring about (a result)").

Plaintiffs sufficiently allege that Motorola has intercepted, disclosed, and used Plaintiffs' illegally-obtained communications, and has also procured and aided the MSP in doing the same. *See, e.g.*, *Pine v. Rust*, 404 Mass. 411 (1989) (affirming award of liquidated damages under the Wiretap Act against not only the woman who secretly made the illegal recordings, but also the woman's husband who planned the secret recording and her brother who supplied the tape recorder she used to make the recordings). This is more than sufficient to state a claim against Motorola for violation of the Wiretap Act, and the Motion seeking dismissal of this count must be denied.

## IV. **Plaintiffs have adequately pled a claim against Motorola under M.G.L. Ch. 93A.**

Motorola first claims that Plaintiffs fail to sufficiently allege a predicate "deceptive" or "unfair" act or practice by Motorola to sustain a Chapter 93A claim. (Motion at 14-15). This is incorrect. Plaintiffs allege that Motorola marketed, manufactured, and sold the intercepting devices to the MSP for the express purpose of allowing MSP to surreptitiously record the oral communications of persons in Massachusetts, with knowledge that violations of the Wiretap Act would likely occur after being expressly warned of the product's flaws by MSP. (FAC at ¶¶ 28-29, 50-51, 65-66). Motorola boasted that its intercepting devices were "hidden in plain sight," made "body wires a thing of the past," and included a feature that disabled "video preview while streaming to avoid detection" while secretly recording oral communications without obtaining the recorded party's consent. (*Id.* at ¶¶ 79-81). Motorola then provided an online database where MSP's secret and illegal recordings could be stored, reviewed, reproduced, and shared by both Motorola and the MSP, with Motorola being granted a royalty-free, worldwide, non-exclusive

license allowing Motorola to use these illicit oral communications housed on this very same Motorola server for Motorola's own financial gain. (*Id.* at ¶¶ 53-54).

At the pleading stage, these allegations (taken as true) support both "deceptive" and "unfair" acts committed by Motorola. As the First Circuit has noted, "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the fact-specific nature of the inquiry." *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998) (internal quotes omitted). Stated plainly, "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact…." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020). An act or practice is deceptive if it has the "capacity or tendency" to deceive. *Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.*, 986 F.2d 605, 605 (1st Cir. 1993). An act or practice is unfair if it falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness," or "is immoral, unethical, oppressive, or unscrupulous." *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975).

Moreover, "Section 2(c) of Chapter 93A also authorizes the Massachusetts Attorney General to issue rules and regulations interpreting section 2(a)'s provisions," *Tomasella*, 962 F.3d at 71, and among such promulgated rules is 940 C.M.R. § 3.16 (the "Regulation"). The Regulation states that an act or practice "is a violation" of Chapter 93A if it either "is oppressive or otherwise unconscionable in any respect," or "fails to comply with existing statutes … or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth." 940 C.M.R. § 3.16(1) & (3). Here, Motorola's actions were oppressive and unconscionable under subsection (1) of the Regulation. (FAC at ¶ 82). Additionally, Plaintiffs allege that Motorola's actions in concert with the MSP violated the Wiretap Act, a law "meant for the protection" of the public's "safety" and "welfare," satisfying subsection (3) of the Regulation as well. Therefore,

Plaintiffs have adequately pled that Motorola committed both "deceptive" and "unfair" acts in violation of Chapter 93A.

Motorola relies on cases decided on summary judgment or after trial, but not on a motion to dismiss. *See, e.g.*, *Gottlieb v. Amica Mut. Ins. Co.*, 57 F.4th 1 (1st Cir. 2022) (summary judgment); *Walsh v. TelTech Sys.*, 821 F.3d 155, 158 (1st Cir. 2016) (same); *Penney v. First Nat'l Bank*, 385 Mass. 715 (1982) (same); *Blue Cross & Blue Shield v. AstraZeneca Pharm. LP (In re Pharm. Indus. Average Wholesale Price Litig.)*, 582 F.3d 156 (1st Cir. 2009) (post-trial). Several others denied motions to dismiss, or reversed dismissal. *See, e.g.*, *Lee v. Conagra Brands, Inc.*, 958 F.3d 70 (1st Cir. 2020) (reversing dismissal of Chapter 93A claim); *Harrington v. CACV of Colo., LLC*, 508 F. Supp. 2d 128 (D. Mass. 2007) (denying motion to dismiss Chapter 93A claim). Motorola's remaining cases involve significantly less factual allegations than exist here, or circumstances where Chapter 93A claims clearly cannot be sustained. *See, e.g.*, *Sarvis v. Casey*, 2023 U.S. Dist. LEXIS 122270 (D. Mass. July 17, 2023) (Chapter 93A claim cannot be based on breach of contract alone); *Kelleher v. Truran*, 2009 U.S. Dist. LEXIS 148000 (D. Mass. July 10, 2009) (filing a single lawsuit cannot constitute a Chapter 93A violation as a matter of law). Motorola incorrectly asserts that Plaintiffs must meet the heightened pleading requirement under Rule 9(b) for fraud-based claims. (Motion at 14). Plaintiffs do not allege any affirmative fraud or misrepresentations by Motorola, and the pleading requirements of *Twombly* are satisfied.

Motorola also claims that Plaintiffs must "allege the existence of [a] commercial relationship between them and Motorola," and that because Plaintiffs did not buy the product from Motorola the Chapter 93A claim must be dismissed. (Motion at 15-16). However, this mischaracterizes the statute, which only requires that Motorola's conduct occur within "trade or commerce" generally and allows "*any* person who has been injured by trade or commerce

*indirectly* affecting the people of this Commonwealth to bring a cause of action." *Ciardi v. F. Hoffmann La Roche, Ltd.*, 436 Mass. 53, 60 (2002) (emphasis in original). In short, "there is no requirement of contractual privity between the plaintiff and the defendants" under section 9 of Chapter 93A. *Id.*; *see also Ryan v. Greif, Inc.*, 2023 U.S. Dist. LEXIS 227380, at *55-56 (D. Mass. Dec. 21, 2023) (same)

A successful Chapter 93A claim can assert that a "defendant's actions interfered with 'trade or commerce'" in some way, even without a direct commercial link between the plaintiff and the defendant. *First Enters. v. Cooper*, 425 Mass. 344, 347 (1997). This "trade or commerce" requirement is satisfied "when the defendant was operating in a business context at the time of its allegedly unfair or deceptive activity." *UBS Financial Services, Inc. v. Aliberti*, 483 Mass. 396, 411 (2019). Here, Plaintiffs allege that Motorola was operating in "a business context" when it manufactured and marketed a product that it knew and expected would cause direct harm to persons in Massachusetts through its contract with the MSP. Motorola interfered with "trade or commerce" when it was warned by the MSP that its products would violate the law, it nonetheless refused to alter its products to comply with the law, and then willfully sold its products. Its products directly injured Plaintiffs, who were the individuals against whom Motorola's products were used and whom Motorola knew would be harmed by its unfair and deceptive actions.

Motorola manufactured, marketed, and promoted its products to the MSP so as to encourage the products' illegal use in the marketplace. This unfair, unconscionable, and deceptive marketing and promotion of Motorola's intercepting devices caused direct injury to Plaintiffs. Under such circumstances, the parties directly harmed by the intended illegal use of the product (here, Plaintiffs) have a viable Chapter 93A claim against the product manufacturer.

In *Walsh v. TelTech Systems*, 821 F.3d 155 (1st Cir. 2016), the defendant (TelTech) manufactured a "SpoofCard" product that allowed its customers to "spoof" or disguise their caller ID and alter their voices when placing calls. A woman (DiLorenzo) purchased the product and used it to place a harassing phone call to the plaintiff (Walsh), making it appear that the phone call was placed by a third individual. Walsh, who had no direct business relationship with TelTech, was forced to leave her apartment, quit her job, and suffered emotional distress because of DiLorenzo's actions. Walsh sued TelTech, alleging violations of the Wiretap Act and Chapter 93A, the latter claim premised on TelTech's "encouraging the use of the SpoofCard for illegal purposes (as evidenced by the promotional material on SpoofCard's website)." *Id.* at 159.

The district court granted summary judgment on Walsh's Chapter 93A claim in favor of TelTech on the ground that Walsh had adduced insufficient evidence of causation – i.e., that Walsh was unable to demonstrate that DiLorenzo had viewed and been influenced by TelTech's marketing of SpoofCard and that her injuries were therefore unconnected to the alleged unfair and deceptive acts – and the First Circuit affirmed on this basis.[4] However, nowhere in *Walsh* does the First Circuit question the propriety of a Chapter 93A lawsuit being asserted by a plaintiff who was not a purchaser or consumer of the product that caused harm. Thus, even though TelTech sold the product to DiLorenzo, Walsh was able to assert her Chapter 93A claim against TelTech for the harm TelTech's product caused her through DiLorenzo's illegal use of that product. *See also Int'l Ass'n of Fire Fighters v. Nat'l Fire Prot. Ass'n, Inc.*, 2024 Mass. Super. LEXIS 28, at *6 (Mar. 5, 2024) (rejecting dismissal of Chapter 93A claim where firefighter's union sued organization that promulgated and maintained standards for firefighters' turnout gear where the defendant's

[4] Plaintiffs' Chapter 93A claim does not suffer from the same defect in causation that undermined *Walsh's* complaint. Even then, the *Walsh* case was decided on a motion for summary judgment, and not a motion to dismiss.

standards required use of carcinogenic materials in that gear, even though the union "had no direct commercial relationship and never entered into any transaction" with the defendant).

In *Soto v. Bushmaster Firearms International, LLC*, 202 A.3d 262 (Conn. 2019) the Connecticut Supreme Court allowed a claim, brought by relatives of victims of the Sandy Hook massacre, under that state's consumer protection statute (the CUTPA, nearly identical to Chapter 93A) to proceed against the manufacturer of the automatic weapon (Bushmaster) used by the perpetrator. Like here, the product at issue is one that can be employed legally and illegally. Like here, the plaintiffs had no business relationship with the defendant and had not bought the product at issue. Like here, the plaintiffs argued that defendants "knowingly marketed, advertised, and promoted" the product in a way that would encourage its illegal use by that purchaser. *Id.* at 272. Like here, the defendant argued that "plaintiffs lacked standing to bring the present action under CUTPA because they were third-party victims who did not have a direct consumer, commercial, or competitor relationship (business relationship or privity requirement) with the defendants." *Id.* at 285.

The trial court agreed with Bushmaster and dismissed the consumer protection claim based on this lack of business connection, but the Connecticut Supreme Court reversed. It held that "[b]ecause the principal evils associated with unscrupulous and illegal advertising are not ones that necessarily arise from or infect the relationship between an advertiser and its customers, competitors, or business associates, we hold that a party directly injured by conduct resulting from such advertising can bring an action pursuant to CUTPA even in the absence of a business relationship with the defendant." *Id.* at 285. Just as in Massachusetts, the privity requirement has been eliminated in Connecticut, allowing "any person who could establish an ascertainable loss as a result of an unfair trade practice" to bring suit. *Id.* at 286. Thus, as long as "the purportedly unfair

trade practice is alleged to have directly and proximately caused the plaintiff's injuries," such claims should be allowed to proceed, as this causation requirement "mitigates any concerns" that allowing such lawsuits would permit "*anyone* [to] bring a CUTPA claim, no matter how attenuated the connection between his or her injuries and a defendant's allegedly unfair trade practices." *Id.* at 288 (emphasis in original). The court held that where the consumer protection claims are based on "a defendant's advertisements unethically promot[ing] illegal conduct, … no private party is better situated" to bring the lawsuit than injured third parties. *Id.* at 291. This is because such "an advertisement models or encourages illegal or unsafe behavior" and "[i]n such instances, the immediate victims are just as likely to be third parties who are not customers, whether it be individuals who engage in inappropriate conduct inspired by the advertisements or the direct victims of that conduct." *Id.* It concluded that "if these plaintiffs cannot test the legality of the defendants' advertisements…, then no one can." *Id.* The same result should occur here, where MSP's illegal use of Motorola's products caused direct harm to Plaintiffs, innocent third-party victims of Motorola's unconscionable marketing and promotion of its products who are the only ones in any position to hold Motorola accountable for its unfair and deceptive acts.

Plaintiffs have alleged numerous injuries, including: (a) the infliction of emotional distress (FAC at ¶¶ 84, 87) (*see Haddad v. Gonzalez*, 410 Mass. 855 (1991) (damages for emotional distress recoverable under c. 93A)); (b) loss of liberty and freedom through their criminal proceedings (FAC at ¶ 88); (c) loss of money due to expenses, fines, and fees in connection with their criminal proceedings (*id.*); the violation of their right to privacy through secret recordings made without their knowledge or consent in violation of the Wiretap Act (FAC at Count VII); and (e) the ongoing illegal and illicit use by Motorola of these recordings through its ability to store,

review, reproduce, analyze, and monetize such recording housed on Motorola's cloud-based server (FAC at ¶¶ 53-54).

Plaintiffs draw a clear and direct line between Motorola's conduct and their injuries. Plaintiffs allege that Motorola's manufacturing, marketing, and promotion of its products procured MSP to act in an illegal manner, and that Motorola knew that such illegal use would inevitably occur. (FAC at ¶¶ 50-52). As a result, Motorola's marketing led directly to MSP's purchase and use of its products, which caused injury to Plaintiffs, as expected. In addition, Motorola continues to store these illegal recordings on its cloud-based servers and has been given a license by the MSP to review, use, and monetize such recordings, further and continuing to harm Plaintiffs. (FAC at ¶¶ 53-54). *See* M.G.L. c. 214 §§ 1B ("Right of Privacy") and 3A ("Unauthorized use of name, portrait or picture of a person; injunctive relief; damages; exceptions").[5]

Motorola cases on causation are inapposite. Both the First Circuit in *Walsh* and the Supreme Judicial Court in *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492 (2013), rejected the plaintiffs' claims where the complaints had failed to set out any additional harm caused by the defendants other than the violation of a separate statutory regime (the Wiretap Act in *Walsh* and M.G.L. c. 93, § 105 in *Tyler*). In *Walsh*, the plaintiff did not prove that the defendant used her recording in its "prank calls app," 821 F.3d at 162, and in *Tyler* the plaintiff did not allege that the defendant had used his personal identifying information for the defendant's "own business purposes," as opposed to simply placing "that information in a file" without using it. 464 Mass. at 503-04, n.17. Here, Plaintiffs' factual allegations (which must be accepted as true) are that Motorola currently owns and possesses the illegal recordings and has been given a perpetual

[5] Plaintiffs have sought leave to conduct limited discovery on the issue of Motorola's monetization of these illegally-obtained interceptions, and the identity of additional potential defendants.

license to freely use, review, and monetize such recordings. (FAC at ¶¶ 50-52). The causal link in *Doe v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), was "shot through with conjecture," *id.* at 24, while the allegations in *King v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 132151 (D. Mass. Aug. 7, 2019), only showed that the defendant "created an environment" for a third-party thief to commit fraud, with nothing more. *Id.* at *12. Plaintiffs' allegations here are much stronger than those contained in these decisions, and are enough to demonstrate both the injuries themselves and that Motorola caused and continues to cause these injuries.

## V. Plaintiffs have adequately pled their breach of warranty claims against Motorola.

Privity of contract is not a requirement for claims for either breach of express or implied warranty. *Hatch v. Trail King Indus. Inc.*, 656 F.3d 59 (1st Cir. 2011). M.G.L. c. 106, § 2-318 provides in relevant part:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods.

Plaintiffs have pled specific affirmations of fact and promises in which Motorola warranted its products complied with Massachusetts law. (FAC at ¶¶ 64-68, 126). Motorola's citations to *Jackson v. Johnson & Johnson & Janssen Pharms., Inc.*, 330 F. Supp. 3d 616 (D. Mass. 2018), *Exum v. Stryker Corp.*, 2013 U.S. Dist. LEXIS 99732 (D. Mass. July 17, 2013), and *Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63 (D. Mass. 2000), miss the mark. Those cases deal with either a motion for summary judgment or first-party claims between a tortfeasor and affected party. Here, Plaintiffs' claims are third-party claims for which privity isn't required. Plaintiffs have alleged sufficient facts to show that Motorola "failed or refused to bring [their] intercepting devices into compliance with Massachusetts law." (FAC at ¶¶ 52, 55). *Taupier v. Davol, Inc.*, 490 F. Supp.

3d 430 (D. Mass. 2020), is not controlling authority, and M.G.L. c. 106, § 2-313 does not require reliance. Should the Court find that reliance is required, Plaintiffs have pled such reliance. (FAC ¶¶ 55 and 92).

Plaintiffs have pled sufficient facts to show Motorola breached its warranty of merchantability for its products. "A seller breaches its warranty obligation when a product that is 'defective and unreasonably dangerous' for the '[o]rdinary purposes' for which it is 'fit' causes injury." *Haglund v. Philip Morris Inc.*, 446 Mass. 741, 746 (2006). Here, Motorola designed its products to "make body wires a thing of the past," (FAC at ¶ 80), but the way in which they did that violated Massachusetts law. (FAC at ¶¶ 50-52). Plaintiffs have alleged that Motorola intentionally designed its product to violate Massachusetts law. *See Back v. Wickes Corp.*, 375 Mass. 633, 642 (1978) (the manufacturer will be liable if its "conscious design choices" fail to anticipate the reasonably foreseeable risks of "ordinary" use).

Motorola is wrong that "[p]laintiffs fail to allege any particular purpose" of the products. "The warranty of fitness for a particular purpose is similar to the warranty of merchantability but applies only where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Taupier*, 490 F. Supp. 3d at 440 (internal quotations omitted). Here, Motorola designed and marketed its products in a particular way which was desirable to the MSP. (FAC at ¶¶ 74, 80-81). MSP and Motorola had conversations about the products, Massachusetts law, and how the products failed to comply with the law. (FAC at ¶¶ 50-52). MSP relied on Motorola's specialized skill and judgment in purchasing the products. (FAC at ¶¶ 107).

## CONCLUSION

Plaintiffs respectfully request that this Court deny Motorola's motion to dismiss.

Respectfully submitted,

JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, and DENNIS WILLIAMS, ON BEHALF OF THEMSELVES, AND ALL OTHERS SIMILARLY SITUATED,

by their attorneys,

/s/ Christopher R. Batinsey
Christopher R. Batinsey, Esq.
BBO# 688586

Batinsey Legal P.C.
344 Main St
Suite 14
Fitchburg, MA 01420
(617) 682-0254
cbatinsey@batinseylegal.com

/s/ James O'Connor, Jr.
James O'Connor, Jr., Esq.
BBO# 563450

Nickless, Phillips and O'Connor, P.C.
780 Main St
PO Box 2101
Fitchburg, MA 01420
(978) 342-4590
joconnor@npolegal.com

/s/ Christopher J. Walton
Christopher J. Walton, Esq.
BBO# 639819

Law Office of Christopher J. Walton
56 Elm St
Fitchburg, MA 01420
(978) 342-9100
attycjw@aol.com

**CERTIFICATE OF SERVICE**

I, James O'Connor, Jr., hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: Friday, August 30, 2024

/s/ James O'Connor, Jr.
James O'Connor, Jr., Esq.