**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, AND DENNIS WILLIAMS,** ***on behalf of themselves and all others similarly situated,*** | ) | |
| **Plaintiffs** | ) | |
| **v.** | ) | **C.A. No. 4:24-cv-40030-MRG** |
| **MOTOROLA SOLUTIONS, INC., CALLYO 2009 CORP., SHI INTERNATIONAL CORP., and COLONEL JOHN E. MAWN, JR.,** ***Interim Superintendent of the Massachusetts State Police, in his official capacity.*** | ) | |
| **Defendants** | ) | |

**DEFENDANT COLONEL JOHN E. MAWN, JR.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant Colonel John E. Mawn Jr., Interim Superintendent of the Massachusetts State Police, in his official capacity ("Defendant Mawn"), submits this memorandum of law in support of his Motion to Dismiss the First Amended Complaint ("Complaint") filed by Plaintiffs[1] in its entirety with respect to Defendant Mawn. Plaintiffs assert that Defendant Mawn violated Plaintiffs' constitutional rights and the Massachusetts Wiretap Act.

As a threshold matter, Plaintiffs' claims are wholly precluded by the Eleventh Amendment to the United States Constitution as Defendant Mawn, in his official capacity as Interim Superintendent of the Massachusetts State Police, as a matter of law, is considered the

[1] The Plaintiffs include Jason Courtemanche, Brett Foresman, Juan Rios, and Dennis Williams, in addition to a class of alleged similarly situated plaintiffs.

"state" and has not waived immunity from suit. In addition, Plaintiffs' purported constitutional claims fail because they do not have standing to bring suit against Defendant Mawn.

Moreover, even if Plaintiffs' claims are analyzed on the merits, they still fail. Plaintiffs' Massachusetts Wiretap Act claim, in which Plaintiffs seek to recover money damages from Defendant Mawn in his official capacity, fails because the recordings at issue in this case were made for the purpose of ensuring the safety of undercover police officers rather than for evidentiary purposes. Plaintiffs' myriad constitutional claims fail because Defendant Mawn is not a federal actor, precluding Plaintiffs' Fifth Amendment claim; Plaintiffs' Fourteenth Amendment claims fail because Plaintiffs cannot identify a life, liberty, or property interest Defendant Mawn deprived Plaintiffs of without due process; and Plaintiffs' Sixth Amendment claims fail as the recordings at issue in this litigation were not provided to prosecutors or used against them in any way in Plaintiffs' criminal cases.

Finally, Defendant Mawn is shielded from liability on the basis of qualified immunity.

Accordingly, as the Court does not have subject-matter jurisdiction to hear Plaintiffs' claims, and Plaintiffs' Complaint fails to plausibly assert actionable claims against Defendant Mawn, their Complaint against him should be dismissed in its entirety.

## II. FACTUAL BACKGROUND[2]

In the Complaint, Plaintiffs allege that the Massachusetts State Police (the "MSP") have unlawfully carried out surreptitious audio and video recordings of persons in Massachusetts and failed to turn over the recordings to a class of Plaintiffs. *See* Complaint, ¶ 1. Plaintiffs allege that in at least 181 known situations, the MSP brought criminal charges against the Plaintiffs but failed to produce the recordings. *Id*.

[2] All factual allegations in the Complaint are assumed to be true for purposes of this Motion only.

The allegations in the Complaint and the documents attached thereto (which are incorporated by reference) demonstrate that these recordings were not used in any of Plaintiffs' criminal cases in any way. *See* Complaint, ¶ 33 ("MSP . . . failed to notify prosecuting agencies about the existence of these recorded statements . . . .); Ex. A[3] ("The audit revealed that the existence of covert recordings was likely not disclosed to ***prosecuting agencies*** in 181 criminal cases that resulted in dispositions of Guilty or Continued Without a Finding." "The 181 cases were flagged because the existence of a covert recording was not mentioned in a report or affidavit filed with the court before final disposition of the case and the member performing the audit was unable to provide documentation that the recording was produced or made known to a prosecuting agency.") (emphasis added).

Plaintiffs allege that the 181 criminal cases resulted in dispositions of Guilty or Continued Without a Finding. *See* Complaint, ¶ 33. Plaintiffs attempt to assert claims against Defendant Colonel John E. Mawn, Jr., in his official capacity as the Interim Superintendent of the Massachusetts State Police. *See* Complaint, ¶ 23.

## III. ARGUMENT

### A. Standard of Review

"A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *See Mourier v. Galvin*, No. 1:23-CV-11280-IT, 2024 WL 3625431, at *2 (D. Mass. Aug. 1, 2024), citing *Katz v. Pershing, LLC*, 672 F.3d 64, 70 (1st Cir. 2012). "Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed." *Id.*, citing *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). "The party asserting jurisdiction has the burden of

[3] Any exhibits referred to in this memorandum refer to exhibits attached to the Complaint.

demonstrating the existence of federal jurisdiction." *Id*. Similarly, courts do not have subject matter jurisdiction over causes of action barred by sovereign immunity. *See Operation Rescue Nat. v. United States*, 975 F. Supp. 92, 100 (D. Mass. 1997), *aff'd,* 147 F.3d 68 (1st Cir. 1998).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).

Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quotation and citation omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief'" the complaint must be dismissed. *Id*., quoting Fed. R. Civ. P. 8(a)(2) ("Rule 8").

### B. Plaintiffs' Claims Are Barred by Eleventh Amendment Sovereign Immunity

#### 1. Plaintiffs' Claim for Damages Against Defendant Mawn Under the Massachusetts Wiretap Act is Barred by the Doctrine of Sovereign Immunity

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law . . . against one of the United States by Citizens of another State . . . ." The Supreme Court has long held that "the Eleventh Amendment bars a citizen from bringing suit against the citizen's own State in federal

court . . . ." *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987), citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

Although Plaintiffs assert that the Defendant Mawn (in his capacity as the Interim Superintendent of the MSP) is a "person" under the Massachusetts Wiretap Act, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985). "As such, it is no different from a suit against the State itself." *Id*. Accordingly, Defendant Mawn, in his official capacity, is immune from suit pursuant to the Eleventh Amendment on Plaintiffs' Massachusetts Wiretap Act claim. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.").

**2. Defendant Mawn is Immune from Suit on Plaintiffs' 42 U.S.C. § 1983 Claims Because Plaintiffs Do Not Plausibly Seek and Cannot Obtain Prospective Injunctive Relief**

Defendant Mawn is also immune from suit with respect to Plaintiffs' 42 U.S.C. § 1983 claims ("Section 1983 claims"). A limited exception to sovereign immunity "allows federal courts, 'notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, [to] enjoin state officials to conform future conduct to the requirements of federal law.'" *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002), quoting *Lane v. First Nat'l Bank*, 871 F.2d 166, 172 n. 5 (1st Cir. 1989). This exception, created by *Ex Parte Young*, requires courts analyzing a Section 1983 claim against a state to answer, "whether the relief [sought] 'serves directly to bring an end to a present violation of federal law.'" *Whalen v. Massachusetts Trial Ct.*, 397 F.3d 19, 29 (1st Cir. 2005), quoting *Papasan v. Allain*, 478 U.S.

265, 278 (1986). Put differently, "[i]n determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002). Further, "the Eleventh Amendment grants States immunity from suits for declaratory judgments." *Philadelphia Indem. Ins. Co. v. Goff*, No. CIV.A 10-10224-GAO, 2010 WL 2204828, at *1 (D. Mass. May 27, 2010).

Defendant Mawn is entitled to sovereign immunity on Plaintiffs' Section 1983 claims because the Complaint fails to allege a present violation of federal law and fails to seek relief that can properly be characterized as prospective. Initially, Plaintiffs fail to specify the scope of the injunctive relief they seek, instead opting to vaguely request "injunctive relief." In addition, the allegations in the Complaint consistently refer to Defendant Mawn's alleged constitutional violations in the past tense, making clear that they are seeking relief with respect to conduct entirely in the past. *See* Complaint, ¶¶ 160-183; *see also Urella v. Verizon New England, Inc.*, 682 F. Supp. 3d 134, 138 (D. Mass. 2023) (holding that exception for prospective injunctive relief does not apply where the complaint characterizes the injunctive relief sought as a remedy to an ongoing violation, but the relief sought was actually retrospective, not prospective).[4] The Complaint fails to allege that the MSP continues to carry out the alleged secret recordings. Indeed, the MSP no longer makes such recordings, as can reasonably be assumed by what Plaintiffs allege was its publicized admission that its past practice was unlawful. *See* Ex. B. Thus, not only do Plaintiffs fail to make clear in the Complaint that they seek only prospective

[4] In addition, to the extent Plaintiffs may argue that they are seeking an injunction to prevent the MSP from unlawfully creating secret recordings in the future, Plaintiffs do not have standing to assert such a claim, as Plaintiffs' Complaint contains no facts suggesting that Plaintiffs will be realistically threatened by repetition of their experiences with the MSP in the future. *See id.* at 138-39.

injunctive relief, the Complaint and common sense indicate and dictate that any request for forward-looking injunctive relief would be moot.[5] Accordingly, Defendant Mawn is immune from suit on Plaintiffs' Section 1983 claims, requiring their dismissal.[6]

### C. Plaintiffs' Lack Article III Standing Because They Fail to Plausibly Allege They Suffered an Injury Fairly Traceable to Defendant's Actions

The Supreme Court has stated that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 37 (1976). "The concept of standing is part of this limitation." *Id.* To establish Article III standing, plaintiff must establish: (1) an injury in fact which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action; and (3) that it is likely that the injury will be redressed by a favorable decision. *Massachusetts v. United States Dep't of Health & Hum. Servs.*, 923 F.3d 209, 221-22 (1st Cir. 2019) (internal quotations omitted). To establish the second element of the test for Article III standing, causation, Plaintiffs must "show a sufficiently direct causal connection between the challenged action and the identified harm." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). To establish the final element, redressability, Plaintiffs must "show that a favorable resolution of [their] claim[s] would likely redress the professed injury." *Id.* at 72.

---

[5] Alternatively, Plaintiffs' Section 1983 claims against Defendant Mawn are also subject to dismissal on the grounds of mootness. *See e.g. Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021) (dismissing claim for injunction as moot where there is simply "no ongoing conduct to enjoin.").

[6] Although Plaintiffs do not explicitly state that they seek to assert a Section 1983 claim against Defendant Mawn under Article 12 of the Massachusetts Declaration of Rights, they cite it in their Section 1983 claim. *See* Complaint, ¶ 160. To the extent Plaintiffs seek to ask the court to enjoin the MSP from engaging in conduct that violates the Massachusetts Declaration of Rights, such a request would be improper, and is barred as a matter of law. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Plaintiffs cannot establish the requisite level of causation to establish Article III standing because even if their claims are accepted as true, it is undisputed that the purportedly unlawful recordings did not result in Plaintiffs' Guilty or Continued Without a Finding dispositions. Indeed, the recordings were not used in any way with respect to Plaintiffs' criminal cases. Plaintiffs allege that the MSP unlawfully used intercepting devices to secretly hear and record the contents of wire or oral communications between themselves and Plaintiffs, brought criminal charges against Plaintiffs, and failed to produce these secret audio recordings or disclose their existence to Plaintiffs, thereby violating the Massachusetts Wiretap Act and Plaintiffs' constitutional rights. *See* Complaint, ¶¶ 2, 4-5. However, the allegations and documentation contained in the Complaint demonstrate that these recordings were not used in any of the Plaintiffs' criminal cases in any way. *See* Complaint, ¶ 33; Ex. A ("The audit revealed that the existence of covert recordings was likely not disclosed to ***prosecuting agencies*** in 181 criminal cases that resulted in dispositions of Guilty or Continued Without a Finding." "The 181 cases were flagged because the existence of a covert recording was not mentioned in a report or affidavit filed with the court before final disposition of the case and the member performing the audit was unable to provide documentation that the recording was produced or made known to a prosecuting agency.") (emphasis added).

The purportedly unlawful recordings could not possibly have caused Plaintiffs Guilty or Continued Without a Finding dispositions where the recordings were never disclosed to prosecuting agencies. Accordingly, since Plaintiffs' arrests, criminal dispositions, and the consequences stemming from those dispositions were not caused by the MSP's purportedly unlawful conduct, Plaintiffs cannot demonstrate the requisite level of causation required to establish Article III standing.

Plaintiffs also cannot establish that success in this matter would redress their injuries, further demonstrating their lack of standing. Specifically, Plaintiffs seek only injunctive relief and a declaratory judgment, neither of which would modify or negate their arrests, criminal dispositions, and the consequences of those dispositions. Accordingly, Plaintiffs' claims should be dismissed due to a lack of standing.[7]

### D. Plaintiffs' Massachusetts Wiretap Act Claim Fails Because the Purpose of the Recordings Were for Officer Safety

Even if this Court were to disagree with Defendant Mawn's sovereign immunity argument concerning Plaintiffs' Massachusetts Wiretap Act claim, it still fails.

The Massachusetts Wiretap Act provides that "[i]t shall not be a violation of this section . . . for investigative or law enforcement officers to violate the provisions of this section for the purposes of ensuring the safety of any law enforcement officer or agent thereof who is acting in an undercover capacity." G. L. c. 272, § 99(D)(1)(e); *see also Commonwealth v. Du*, 103 Mass. App. Ct. 469, 481-82 (2023), *review granted,* 493 Mass. 1106 (2024) (law enforcement is "insulated from [civil] liability" for Wiretap Act violations where violations are for the purposes of ensuring officer safety).

Although Plaintiffs assert that "the secret recordings were created for evidentiary purposes and not for officer safety," Complaint, ¶ 171, their allegations fly in the face of their own assertions as outlined in the documents attached to their Complaint. *See* Complaint, Ex. A

---

[7] In addition, as Defendant Motorola stated in its Memorandum of Law in Support of its Motion to Dismiss, Plaintiffs also failed to plausibly allege the first element, concrete and particularized harm. Article III standing requires a plaintiff-by-plaintiff and claim-by-claim analysis to link concrete injuries to each of Plaintiffs' claims. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 733 (1st Cir. 2016). Plaintiffs make vague and conclusory allegations that they were "deprived of their constitutional rights, such as the right to receive "exculpatory evidence," "effective assistance of their counsel," be "presented with evidence against them," to "confront their accusers, and enjoy a fair and impartial trial." *See* Complaint, ¶¶ 57, 165-67. However, Plaintiffs fail to make any allegations regarding, for example, how the recordings not produced to them were exculpatory. In addition, it is undisputed that the recordings were not used against Plaintiffs in their criminal proceedings.

("The 181 cases were flagged *because the existence of a covert recording was not mentioned in a report or affidavit filed with the court before final disposition of the case* and the member performing the audit was *unable to provide documentation that the recording was produced or made known to a prosecuting agency*.") (emphasis added). Indeed, Plaintiffs also explicitly allege in the Complaint that "MSP failed to notify prosecuting agencies about the existence of these recorded statements . . . ." *See* Complaint, ¶ 33. Thus, where Plaintiffs allege that the recordings were not shared with or made known to prosecuting agencies, they clearly could not have been for an evidentiary purpose. Rather, the live streams and recordings were made for officer safety. Accordingly, Plaintiffs' Wiretap Act claims should be dismissed.

**E. Plaintiffs Fail to Adequately Plead a Claim Under 42 U.S.C. § 1983**

As an initial matter, Plaintiffs' Fifth Amendment Due Process claims fail because Defendant Mawn is not a federal actor. "The Fifth Amendment Due Process Clause . . . applies only to actions of the federal government—not to those of state or local governments." *See* *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8–9 (1st Cir. 2007); *Garrison v. Cuddyer*, 2014 WL 5092279, at *2 (D. Mass. Oct. 7, 2014) (same). Plaintiffs allege that Defendant Mawn is a state actor, not a federal actor. *See* Complaint, ¶ 160. As a result, Plaintiffs cannot pursue Fifth Amendment claims on this basis alone.

Plaintiffs' Fourteenth Amendment Due Process claims also fail. Initially, Plaintiffs do not specify whether they are bringing claims against Defendant Mawn under procedural or substantive due process. Plaintiffs' Fourteenth Amendment claims thus should be dismissed for failure to satisfy Rule 8's basic fair notice pleading requirements. However, regardless of whether Plaintiff's Fourteenth Amendment claims are analyzed under procedural or substantive due process, they fail on the merits.

Although Plaintiffs entirely fail to define the life, liberty, or property interest Defendant Mawn purportedly deprived Plaintiffs of without due process, Defendant Mawn assumes, for purposes of this motion, that Plaintiffs refer to interest in freedom from incarceration and/or the other consequences from their criminal dispositions. In doing so, Plaintiffs appear to seek to hold Defendant Mawn civilly liable for a *Brady* violation. *See* Complaint, ¶ 165 ("MSP's failure to produce these secret recordings to Plaintiffs deprived them of exculpatory evidence at trial."). However, Plaintiffs' claims are plainly without legal or factual merit. To establish a *Brady* violation, Plaintiffs would need to demonstrate that the government withheld material exculpatory evidence. *See United States v. Rosario-Peralta*, 175 F.3d 48, 53 (1st Cir. 1999). Information is only "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See United States v. Blais*, 98 F.3d 647, 651 (1st Cir. 1996). Plaintiffs have not plausibly pled that the referenced recordings would be material and exculpatory, and instead have only supported their claims with conclusory allegations. *See* Complaint, ¶ 165. This is insufficient as a matter of law to survive a motion to dismiss. *See e.g. Harvey v. United States*, No. CIV.A.05-2654 JEI, 2006 WL 477005, at *7 (D.N.J. Feb. 27, 2006) ("bald assertions and conclusory allegations" do not warrant relief in *Brady* claims). Accordingly, Plaintiffs cannot assert a procedural due process claim.

If Plaintiffs seek to establish a Section 1983 claim based on a substantive due process violation, such claim would also fail. "[T]o assert a valid substantive due process claim, [Plaintiffs] have to prove that they suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (emphasis in original) (citation

omitted). The allegations in the Complaint fall far short of "conscious shocking" behavior. Indeed, Plaintiffs have not even made an effort to explain how the conduct asserted in the Complaint could conceivably "shock the conscience." The Complaint merely alleges that the MSP failed to produce records to Plaintiffs, but the recordings were not used in any capacity in the Plaintiffs' criminal cases and had no impact whatsoever on their criminal dispositions. *See* Complaint, ¶¶ 165-166; Ex. A. These bare allegations do not come close to "conscious shocking," behavior, and therefore Plaintiffs cannot plausibly bring a valid substantive due process claim against Defendant Mawn.

Finally, Plaintiffs undergo a futile attempt to assert Sixth Amendment violations, under the theory that the MSP's failure to produce recordings that were also not produced to prosecutors deprived Plaintiffs of their rights "to effective assistance of their counsel . . . to be presented with evidence against them, confront their accusers, and enjoy a fair and impartial trial . . ." *See* Complaint, ¶¶ 166-167. Once again, Plaintiffs did not undertake any effort to explain how the MSP's actions violated these rights. Indeed, as previously stated, the recordings at issue were not produced to prosecutors and were not used against Plaintiffs in any way in their criminal matters. *See* Complaint, ¶ 33; Ex. A. The recordings were not presented against Plaintiffs, used as evidence, and were not a part of any trials or other criminal proceedings.

As Plaintiffs fail to plausibly allege that the MSP violated their rights under the Fifth, Sixth, or Fourteenth Amendment to the United States Constitution, Plaintiffs Section 1983 claims should be dismissed.

### F. Defendant Mawn is Immune from Suit on the Basis of Qualified Immunity on Both of Plaintiffs' Claims Against Him

#### 1. Defendant Mawn is Immune from Suit on the Basis of Qualified Immunity on Plaintiffs' Section 1983 Claims

The doctrine of qualified immunity protects public officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a state actor, such as Defendant Mawn, is entitled to qualified immunity, the court must consider "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004).

Initially, Defendant Mawn is entitled to qualified immunity because none of Plaintiffs' hodgepodge of allegations of constitutional violations survive scrutiny, as previously discussed. More specifically, the conduct at issue does not implicate any "clearly established" right to the discovery of evidence unfavorable to a criminal defendant that is not used in their criminal proceedings. *Cf. Brady v. Maryland*, 373 U.S 83, 87 (1963) (holding that the suppression by the government of *"evidence favorable to an accused upon request* violates due process where the evidence is material to guilt or to punishment.") (emphasis added). Although Plaintiffs allege in a conclusory fashion that the evidence was exculpatory, Plaintiffs do not plead any facts to plausibly allege *how* the recordings were exculpatory, and thus their naked assertions should be disregarded. *See* Complaint, ¶ 165. Finally, Defendant Mawn is entitled qualified immunity because any alleged constitutional violations at issue were inadvertent and unknown. In fact,

documents attached to the Complaint explain that "[m]any Department members were unaware of the features of various Callyo products, even though they were routinely using these products . . . , Callyo products do not always make it clear to the user whether an event is being recorded or merely livestreamed . . . , [and] [m]ost members of the Department using Callyo products never received formal training on their use." *See* Complaint, Ex. B. It cannot plausibly be stated that the MSP officers would have understood that their creation of the at-issue recordings would constitute a violation of Plaintiffs' constitutional rights where the officers were not even aware that the recordings were being created. *See Limone*, 372 F.3d at 44 (requiring an officer to understand that a challenged action would contravene a constitutional right).

Accordingly, Defendant is immune from suit on the basis of qualified immunity on Plaintiffs' Section 1983 claims, requiring their dismissal.

**2. Defendant Mawn is Immune from Suit on the Basis of Qualified Immunity on Plaintiff's Massachusetts Wiretap Act Claims**

In addition to the concept of federal qualified immunity, the Massachusetts Supreme Judicial Court has recognized the doctrine of sovereign immunity under state law, holding that public officials are not liable for their discretionary acts unless they have violated a right under Federal or State constitutional or statutory law that was "clearly established" at the time. *See Duarte v. Healy*, 405 Mass. 43, 47 (1989). The Massachusetts Appeals Court decision in *Du* was the first ruling in Massachusetts finding that recordings made by a police officer in a public place violated the Massachusetts Wiretap Act. *See Du*, 103 Mass. App. Ct. at 481. In addition, even where a recording violates the Wiretap Act and is properly excluded from evidence, police officers enjoy immunity from liability where the recording is made for the safety of an undercover officer. *See* G. L. c. 272, § 99(D)(1)(e). The recordings at issue in this litigation were made in 2022, prior to the *Du* decision. *See* Complaint, ¶¶ 35, 38, 41, 44. Accordingly,

even if a determination were made that Defendant Mawn violated the Wiretap Act (which he expressly denies), Plaintiffs rights under the Wiretap Act were not "clearly established" at the time of the violation, thus warranting Defendant Mawn's protection from civil liability on the basis of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss all claims asserted against Defendant Mawn in the Complaint with prejudice.

Respectfully submitted,

COLONEL JOHN E. MAWN, JR.,

Interim Superintendent of the
Massachusetts State Police, in his
Official Capacity,

By His Attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Jeffrey T. Collins*

Jeffrey T. Collins (BBO No. 640371)
Special Assistant Attorney General
Robert Papandrea (BBO No. 711504)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA 02109-2605
(617) 523-6666
jcollins@morganbrown.com
rpapandrea@morganbrown.com

Dated: October, 25, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2024, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants.

*/s/ Jeffrey T. Collins*
Jeffrey T. Collins