**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, AND DENNIS WILLIAMS, on behalf of themselves and all others similarly situated, | Civil Action No.: 4:24-cv-40030-DHH |
| Plaintiffs, | |
| v. | |
| MOTOROLA SOLUTIONS, INC., CALLYO 2009 CORP., SHI INTERNATIONAL CORP., and COLONEL JOHN E. MAWN, JR., Interim Superintendent of the Massachusetts State Police, in his official capacity, | |
| Defendants. | |

**DEFENDANTS MOTOROLA SOLUTIONS, INC. AND CALLYO 2009 CORP.'S
MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OR,
IN THE ALTERNATIVE, CERTIFICATION UNDER 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

I.      Motorola's Products Are Not Inherently Illegal ................................................................ 2

II.     The FAC Fails to Allege that Motorola Had Reason to Believe MSP Would Use the Recording Devices Illegally, Such that the Alleged Violations Were Reasonably Foreseeable to Motorola ........................................................................................................ 5

III.    Plaintiffs Failed to Adequately Allege a Chapter 93A Claim ............................................. 7

IV.     Alternatively, Certification Is Warranted Under 28 U.S.C. § 1292(b) .............................. 9

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akebia Therapeutics, Inc. v. Azar*,
    2020 WL 5732331 (D. Mass. Sept. 24, 2020) ...........................................................................11

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
    762 N.E.2d 303 (2002)...................................................................................................................8

*Commonwealth v. Aponte*,
    No. 2216CR000495 (Mass. Dist. Ct. July 8, 2024) .........................................................4, 6, 10

*Commonwealth v. Du*,
    219 N.E.3d 843 (Mass. App. Ct. 2023), *aff'd*, 245 N.E.3d 1046 (Mass. 2024) .................4, 10

*Cruz v. Talmadge*,
    244 F. Supp. 3d 231 (D. Mass. 2017) ...........................................................................................1

*Go-Best Assets Ltd. v. Citizens Bank of Mass.*,
    972 N.E.2d 426 (Mass. 2012) .......................................................................................................7

*Guilfoile v. Shields*,
    913 F.3d 178 (1st Cir. 2019).........................................................................................................6

*In re TelexFree Sec. Litig.*,
    357 F. Supp. 3d 70 (D. Mass. 2019) .............................................................................................7

*Kim v. Soule*,
    2014 WL 2117385 (D. Mass. May 20, 2014) ...............................................................................8

*Meijer, Inc. v. Ranbaxy Inc.*,
    245 F. Supp. 3d 312 (D. Mass. 2017) .......................................................................................9, 10

*Moniz v. Bayer Corp.*,
    484 F. Supp. 2d 228 (D. Mass. 2007) ...........................................................................................8

*Ruiz Rivera v. Pfizer Pharms., LLC*,
    521 F.3d 76 (1st Cir. 2008).........................................................................................................1

*Ryan v. Greif, Inc.*,
    708 F. Supp. 3d 148 (D. Mass. 2023) ...........................................................................................8

*Simmons v. Galvin*,
    2008 WL 11456109 (D. Mass. Jan. 16, 2008) ............................................................................11

*Swenson v. Yellow Transp., Inc.*,
   317 F. Supp. 2d 51 (D. Mass. 2004) ..................................................................................8

*United States v. Brooks*,
   145 F.3d 446 (1st Cir. 1998) ..........................................................................................11

*Wright v. United Servs. Auto. Ass'n*,
   2024 WL 4681749 (D. Mass. Nov. 5, 2024) ....................................................................9

**Statutes**

28 U.S.C. § 1292(b) ...............................................................................................1, 9, 12

Mass. Gen. Laws ch. 272, § 99(B)(4) ....................................................................................4

Mass. Gen. Laws. ch. 272, § 99(B)(7) ...................................................................................4

Mass. Gen. Laws ch. 272, § 99(D)(1).....................................................................................3

Mass. Gen. Laws ch. 272, § 99(D)(1)(d) ...........................................................................3, 4

Mass. Gen. Laws ch. 272, § 99(D)(1)(e) ...............................................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).............................................................................................................3

**INTRODUCTION**

Defendants Motorola Solutions, Inc. and Callyo 2009 Corp. (together, "Motorola") respectfully request that the Court reconsider its March 28, 2025 Memorandum and Order (ECF 72, "Order"), to the extent the Court denied their motion to dismiss as to plaintiffs' Wiretap Act, Chapter 93A, and implied warranty of merchantability claims.

The Court declined to dismiss these three claims based on a misapprehension that (i) the Motorola recording devices at issue in this case are inherently illegal because of their default setting, which was allegedly discussed at a meeting with the Massachusetts State Police ("MSP") in 2017; and (ii) MSP's allegedly illegal recording of plaintiffs' communications using Motorola's products was reasonably foreseeable to Motorola, even though plaintiffs do not allege that anything discussed at the 2017 meeting suggested that MSP would use the recording devices in a way that violated Massachusetts law, including, for example, by failing to first obtain a warrant.

A motion for reconsideration is appropriate where "1) the movant presents newly discovered evidence, 2) shows there has been an intervening change in the law or 3) demonstrates that the initial decision was based on a manifest error of law or was clearly unjust." *Cruz v. Talmadge*, 244 F. Supp. 3d 231, 235 (D. Mass. 2017) (quotation marks omitted). "[A] motion for reconsideration should be granted if the court has patently misunderstood a party . . . or has made an error not of reasoning but apprehension." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008) (second alteration in original) (quotation marks omitted).

Because the Court's denial of the motion to dismiss as to these three claims was based on misapprehensions of law, the Court should grant this motion for reconsideration.

Alternatively, Motorola requests certification of the Court's Order for interlocutory review under 28 U.S.C. § 1292(b), so that the First Circuit can decide these issues together with the appeal of Motorola's co-defendant, the Massachusetts State Police ("MSP"). MSP has appealed the Order

as of right.  Certification of the Order as to Motorola is appropriate because the Order presents controlling questions of law as to which there is substantial ground for a difference of opinion, and because certification would materially advance the ultimate termination of the case.  Indeed, certification is in the interest of party and judicial economy because it will allow issues that are inextricably intertwined to be considered together by the court of appeals, and will avoid duplicative proceedings in this Court.  MSP's appeal has divested this Court of jurisdiction over MSP, and thus MSP will not be available to participate in discovery and other pre-trial matters while its appeal is pending.  MSP's participation is central to discovery in this case, and discovery cannot meaningfully proceed without it.  Discovery that does proceed without MSP's participation, such as depositions, might need to be redone depending on the outcome of MSP's appeal.  Given that this case cannot meaningfully proceed while MSP's appeal is pending, it would accordingly serve the interests of all parties and the Court to certify the legal issues underlying Motorola's motion to dismiss for interlocutory appeal for consideration together with MSP's appeal.

## I.    Motorola's Products Are Not Inherently Illegal

The only relevant factual allegations against Motorola in the First Amended Complaint ("FAC") are that: (1) Motorola and MSP had a meeting in 2017; (2) during that meeting, MSP "informed Motorola/Callyo that its intercepting devices failed to comply with the Massachusetts two-party consent law"; and (3) "Motorola/Callyo failed or refused to bring its intercepting devices into compliance with Massachusetts law, and it continued to sell its non-compliant intercepting devices to MSP."  FAC ¶¶ 50-52.  The FAC fails to plead any other facts regarding the circumstances of this alleged meeting, including who from Motorola and MSP was present and what response Motorola gave to MSP's alleged request.[1]  The FAC also fails to plead any statement

---

[1] The Court construed Motorola's counsel's statements at oral argument as an "admi[ssion] that the 2017 meeting occurred, that MSP told Motorola the apps did not comply with Massachusetts law, and that Motorola refused to make

made by MSP that would have suggested to Motorola that they would use the devices in a way that did not comply with Massachusetts law.  Accordingly, it appears that the only purported factual basis for the claim that Motorola's devices "failed to comply" with Massachusetts law is that the MSP allegedly "asked Motorola/Callyo to modify its intercepting devices to 'not record' by default," and that Motorola/Callyo allegedly "failed or refused to comply with MSP's request for modification."[2]  *Id.* ¶¶ 66-67; *see also id.* ¶¶ 179-81.

Accordingly, the Court's decision not to dismiss the FAC in its entirety relied on a misapprehension that because Motorola's products allegedly recorded "by default," they were inherently illegal under the Wiretap Act.[3]

But this is not so.  Motorola's products were sold exclusively to law enforcement agencies across the country—in jurisdictions with widely diverse requirements for recording—and the Massachusetts Wiretap Act specifically provides for several exceptions from Massachusetts' two-party consent law for law enforcement officers.  *See* Mass. Gen. Laws ch. 272, § 99(D)(1).  Unlike a private citizen, who can only record if the other side consents, there are several ways that law enforcement officers are authorized to make covert, one-party consent, recordings.

For instance:

- MSP could have made covert recordings pursuant to a warrant.  *See id.* § 99(D)(1)(d).

---

any changes to the app because it disagreed with MSP that the app violated the law."  Order 30.  Counsel did not intend, however, for these statements to be concessions.  Rather, counsel was merely making the point that even if the FAC's allegations are assumed to be true for purposes of the motion to dismiss—as required in considering a Rule 12(b)(6) motion—it would not be plausible that Motorola violated any law.

[2] *See* Order 25 (noting that plaintiffs' allegations "are just barely enough" to plausibly state plaintiffs' claims).

[3] *See* Order 30 (stating that Motorola's products "were out of compliance with the Wiretap Act because MSP told the company so").

3

- MSP could have made covert recordings in connection with an organized crime investigation, which is broadly defined. *See id.* § 99(B)(4), (7).[4]

- MSP could have made covert recordings to ensure the safety of undercover law enforcement officers. *See id.* § 99(D)(1)(e).

Thus, the Motorola products would have been unquestionably legal had they been used in these circumstances. Indeed, in *Commonwealth v. Du*, 219 N.E.3d 843 (Mass. App. Ct. 2023), *aff'd*, 245 N.E.3d 1046 (Mass. 2024), a decision cited by this Court in its dismissal Order, the Massachusetts Appeals Court considered MSP's use of the same Motorola recording devices at issue here and explained that "the [Wiretap Act] allows the Commonwealth to insulate itself prophylactically from liability [while using Motorola products] by obtaining a warrant." *Id.* at 856. Moreover, the *Du* court also acknowledged the organized crime exception to the Wiretap Act would similarly provide support for using Motorola's recording devices without a warrant. *Id.* at 852. Further, the findings made by the Fitchburg district court decision submitted by plaintiffs in this action, *see* ECF 57-3, and of which this Court took judicial notice, *see* Order 4 n.5, also concluded that MSP officers were "aware of the need for warrants for covert recordings" and had "previously written an application for [those] warrant[s]." *Commonwealth v. Aponte*, No. 2216CR000495 (Mass. Dist. Ct. July 8, 2024), ECF 57-3 at 32. Motorola neither had control over MSP's ability to comply with the Wiretap Act (*i.e.*, by obtaining a warrant or by only recording in connection with an organized crime investigation or to protect officer safety) nor could it plausibly

---

[4] *See* Mass. Gen. Laws. ch. 272, § 99(B)(7) (defining designated offenses to "include the following offenses in connection with organized crime as defined in the preamble: arson, assault and battery with a dangerous weapon, extortion, bribery, burglary, embezzlement, forgery, gaming in violation of section seventeen of chapter two hundred and seventy-one of the general laws, intimidation of a witness or juror, kidnapping, larceny, lending of money or things of value in violation of the general laws, mayhem, murder, any offense involving the possession or sale of a narcotic or harmful drug, perjury, prostitution, robbery, subornation of perjury, any violation of this section, being an accessory to any of the foregoing offenses and conspiracy or attempt or solicitation to commit any of the foregoing offenses").

foresee that MSP would (allegedly) fail to do so in recording plaintiffs' communications. ECF 30 at 3-4 ("Mot.").

In short, the Motorola products are not inherently illegal in Massachusetts, and Motorola had no reason to believe that the MSP would use the products in an illegal manner. The Court's opinion failed to consider, or even mention, these exceptions to the Massachusetts Wiretap Act, and it based its decision on a misapprehension that Motorola's products were inherently noncompliant with Massachusetts law. And, because the Court relied on its finding that Motorola "sold and marketed legally noncompliant products to the Commonwealth" to deny dismissal of plaintiffs' Wiretap Act, Chapter 93A, and merchantability claims, *see* Order 24, 30, 34, those claims improperly survived Motorola's motion to dismiss. Accordingly, the Court should reconsider its denial of the motion to dismiss those claims.

## II. The FAC Fails to Allege that Motorola Had Reason to Believe MSP Would Use the Recording Devices Illegally, Such that the Alleged Violations Were Reasonably Foreseeable to Motorola

The Court also found that "it was reasonably foreseeable to Motorola that MSP officers would violate Plaintiffs['] rights because Plaintiffs allege that MSP relayed to Motorola that officers' conduct while using the apps' default settings was in direct violation of the Wiretap Act." Order 11.

But the FAC's allegations do not allow this Court to conclude that Motorola could have foreseen that MSP, a law enforcement body fully aware of the requirements for obtaining a warrant, for example, would violate Massachusetts law. Even if it was true that Motorola would not (or could not) change the default setting, there was nothing in the products that would have prevented MSP from actually recording *only* under legal circumstances. In other words, nothing prevented MSP from recording when they had a court-issued warrant, or when they were conducting an organized crime investigation, or when they needed to protect the safety of an

5

undercover officer—and then not recording when those circumstances did not exist.  A default setting is just that, a default; the product could always be turned off when it was not appropriate (or legal) to make a recording.  And neither the FAC nor the Court's Order cites any aspect of the Wiretap Act or other law that makes it unlawful to sell a recording device in Massachusetts with a default setting to record that can be switched on and off by the user.  There is thus nothing in the FAC that would make it plausible that Motorola would have expected MSP to violate the law.

The Fitchburg district court decision once again demonstrates MSP's knowledge of the recording settings and undercuts the FAC's allegations.  That court concluded that "each [MSP] user/account holder [of Motorola devices] . . . is on actual notice that the line is being recorded" and that even though "[t]hat was the default setting, . . . it could be changed either during the initial setup of the application or at any time thereafter in the 'edit settings' function."  ECF 57-3 at 15. The court further observed that "[c]hanging the default setting was easy for the user (or administrator) since it only involved 'unchecking' one setting."  *Id.*  Given that MSP was aware of the default settings for its devices *and* the necessity to comply with the Wiretap Act at the time the alleged unlawful recordings of plaintiffs were made, MSP's alleged failure to use the devices in compliance with Massachusetts law was not reasonably foreseeable to Motorola.  It is also at the very least an intervening event sufficient to break any causal link between Motorola's alleged conduct and plaintiffs' alleged injuries.  *See Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (finding the Court may "give the plaintiff the benefit of all *reasonable* inferences," but it may not "draw *unreasonable* inferences or credit bald assertions [or] empty conclusions" (emphases added) (quotation marks and citation omitted).  Because the Court's finding that it was reasonably foreseeable to Motorola that MSP would fail to use its devices in compliance with Massachusetts law formed the basis for the Court's decision as to the Chapter 93A and merchantability claims,

*see* Order 24, 30, the Court's failure to dismiss those claims was based on a misapprehension of law and should be reconsidered.

For these same reasons, the Court's finding that plaintiffs sufficiently alleged "Motorola substantially assisted MSP in violating the Wiretap Act by providing the intercepting devices through which MSP made the secret recordings and by maintaining/storing the recordings on the cloud," to state a Wiretap Act claim is also incorrect. Order 34. Without allegations that Motorola knew of or shared MSP's intent to *continue* to use Motorola products without a warrant and *continue* to use Motorola products without exercising its ability to switch off the default setting, "the mere provisions of [recording] services . . . cannot actively or substantially assist [a tort]." *See, e.g.*, *In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 70, 76 (D. Mass. 2019) (finding bank's provisions of banking services, without active participation in the underlying tort, was insufficient to substantially assist in fraud); *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 438 (Mass. 2012) (finding bank's provisions of banking services without evidence of bank's knowledge or shared intent to commit fraud insufficient to establish aiding and abetting claims). Thus, the Wiretap Act claim fails for this independent reason.

Because any violations of law were not foreseeable to Motorola, this Court should grant the motion to reconsider.

## III.    Plaintiffs Failed to Adequately Allege a Chapter 93A Claim

Finally, the Court found that the FAC adequately alleged a commercial relationship as required to state a Chapter 93A claim because "the MSP-Motorola commercial contract was undertaken by a state agency purportedly working in service of the public, including Plaintiffs." Order 20.

This was a legal error. While some courts have found that a direct commercial relationship is not required to state a Chapter 93A claim, those courts still acknowledge that "some kind of

7

commercial link" between the parties is required. *Ryan v. Greif, Inc.*, 708 F. Supp. 3d 148, 179 (D. Mass. 2023).

The Court here relied on *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303 (2002), and *Moniz v. Bayer Corp.*, 484 F. Supp. 2d 228 (D. Mass. 2007), concluding that this case is "more analogous to those two cases" than to *Ryan*. Order 20. But while the Court concluded that Motorola is an upstream manufacturer like the defendants in *Ciardi* and *Moniz*, it overlooked that, unlike the plaintiffs in those cases, plaintiffs here *did not purchase* any product directly or indirectly manufactured by Motorola. *See Ciardi*, 762 N.E.2d at 305 n.3; *Moniz*, 484 F. Supp. 2d at 229; *see also* Mot. 15-16.

As courts have held, when, as here, "there [i]s no relationship between the plaintiffs and the defendants at all prior to the accident, . . . it is axiomatic that the alleged wrongful conduct did not arise in a business context between them" and "the claim under ch. 93A fails." *Swenson v. Yellow Transp., Inc.*, 317 F. Supp. 2d 51, 57 (D. Mass. 2004); *see also, e.g.*, *Kim v. Soule*, 2014 WL 2117385, at *3 (D. Mass. May 20, 2014) (dismissing Chapter 93A claim because, "[w]hile [defendant] was engaged in trade or commerce at the time of the accident, the alleged wrongful conduct did not arise in a business context between [plaintiff] and [defendant] as evidenced by the lack of any relationship prior to the accident between the defendants and [plaintiff]"). Moreover, the Court points to no authority suggesting that the Massachusetts legislature intended to subject all government contractors to Chapter 93A liability brought by *any member of the public* merely because the contractors provide services to government agencies working in service of the public, which includes the plaintiffs here. The Court's holding that the FAC adequately alleged a commercial relationship with Motorola to state a Chapter 93A claim based on such a theory is a legal error that warrants reconsideration.

8

**IV.     Alternatively, Certification Is Warranted Under 28 U.S.C. § 1292(b)**

Alternatively, the Court should certify its Order for interlocutory review under 28 U.S.C. § 1292(b).  Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory review when (1) the court's order involves a "controlling question of law;" (2) there is a "substantial ground for difference of opinion;" and (3) an "immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Order satisfies each of the 1292(b) requirements.

*First*, all that must be shown for a question to be "'controlling' within the meaning of 1292(b) [is] if reversal would terminate the action."  *Wright v. United Servs. Auto. Ass'n*, 2024 WL 4681749, at *2 (D. Mass. Nov. 5, 2024) (quotation marks omitted) ("Typically, when an order is certified for interlocutory appeal, the question will potentially dispose of the entire lawsuit." (quotation marks omitted)).  The issue here is a pure question of law: whether Plaintiffs have adequately alleged that Motorola's recording devices are *per se* unlawful and that it was foreseeable to Motorola that its devices would be used unlawfully by MSP to record Plaintiffs.  "Moreover, the First Circuit can make such a determination with minimal review of the factual record because it only requires statutory and case law interpretation."  *Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 315 (D. Mass. 2017).  Given that dismissal of these remaining claims would result in dismissal of the action against Motorola, resolution of these pure legal issues in favor of Motorola would "materially affect the outcome of the litigation."

*Second*, Motorola respectfully submits that there is substantial ground for difference of opinion with respect to whether its recording devices are unlawful and whether Motorola could have foreseen that they would allegedly be used in an unlawful manner by MSP.  "A substantial ground for a difference of opinion arises where an issue involves one or more difficult and pivotal questions of law not settled by controlling authority."  *Meijer*, 245 F. Supp. 3d at 315 (quotation

9

marks omitted).  The Court itself acknowledged that the issues presented a close call: "Plaintiffs' allegations regarding Motorola's actual or constructive knowledge that MSP's secret recordings were resulting in constitutional violations and the extent to which Motorola could foresee these violations are *just barely enough* to cross into 'plausibility' required to state a claim at a motion to dismiss."  Order 25 (emphasis added).  And other decisions discussed above, like *Du* and *Aponte*, *supra* pp. 4, 6, have not found that Motorola's devices were *per se* unlawful based on a default setting, or that Motorola's conduct caused the alleged unlawful recording by MSP.  That divergence alone reflects a substantial ground for difference of opinion.  More generally, there is substantial ground for difference of opinion on the question of whether a company that sells recording devices to law enforcement that have a default record setting that may be turned off— in a jurisdiction where one-party consent is sometimes sufficient—can  be held legally liable for allegedly unlawful recording.  *See supra* pp. 4, 6 (discussing inconsistencies between findings made in *Du* and *Aponte*, on the one hand, and the Order here, on the other hand).  That question also has important public policy implications and is of broad significance for law enforcement and for companies who provide technology that assists law enforcement with their investigations and community interactions.  The claims here therefore raise unique and important legal questions that would benefit from early resolution by the First Circuit.

*Third*, "[t]he requirement that an appeal will materially advance the ultimate termination of the litigation is 'closely tied' to the controlling-question-of-law element" and "is satisfied if reversal of the Court's decision advances the termination of the litigation."  *Meijer*, 245 F. Supp. 3d at 315.  As explained above, if the First Circuit reverses and concludes that Plaintiffs have not adequately pled foreseeability or that Motorola's products are illegal, the present case against Motorola would be terminated.

Moreover, in light of MSP's appeal as of right of the denial of its qualified immunity motion, there are strong pragmatic reasons to grant certification. Certification here would promote party and judicial economy by avoiding this case involving inextricably intertwined issues and allegations proceeding on two tracks. Absent certification, the claims against Motorola will "portend[] a potential for conflict and confusion." *United States v. Brooks*, 145 F.3d 446, 456 (1st Cir. 1998). "The filing of a notice of appeal divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal." *Id.* at 455 (quotation marks omitted). As this Court already recognized, in retaining supplemental jurisdiction over the remaining claims against Motorola, "Plaintiffs' claims, collectively, arise from the same nucleus of operative fact that begins with Motorola's manufacturing of the Callyo apps and its contract with MSP and extends to MSP's alleged violations of Plaintiffs' constitutional rights through usage of the Callyo apps." Order 15. Thus, because the claims asserted against MSP and Motorola are inextricably intertwined, "there is a significant chance that the First Circuit will opine on issues germane" to the remaining claims against Motorola. *See Akebia Therapeutics, Inc. v. Azar*, 2020 WL 5732331, at *3 (D. Mass. Sept. 24, 2020). It is thus "in the interests of efficiency and judicial economy for the Court to wait until the First Circuit has issued its opinion." *Id.*

"In addition, a decision by the First Circuit before discovery and trial could save the substantial time and expense that will be necessary to resolve the [remaining] claim[s]" against Motorola, and conserve judicial and party resources. *Simmons v. Galvin*, 2008 WL 11456109, at *3 (D. Mass. Jan. 16, 2008). In particular, because the claims and allegations against Motorola and MSP are intertwined, so are the discovery and pretrial matters. Discovery into exactly how MSP used Motorola's devices will be critical for resolution of this case and is critical to the claims against Motorola, yet MSP will be unavailable for these proceedings in this Court until the

11

termination of its First Circuit appeal.  Nor can Motorola be fairly required to take depositions of plaintiffs without the benefit of document discovery from MSP that it will be unable to obtain during the pendency of the appeal.  Discovery accordingly cannot meaningfully advance as to the claims against Motorola during the pendency of that appeal.  And even if discovery did advance, it would almost certainly have to be redone if MSP loses its appeal because MSP will need the opportunity to participate in depositions.  Further, if the court of appeals remands the claims against MSP back to this Court, the pre-trial proceedings for Motorola and MSP will be misaligned.  Given that the delay attendant to an appeal is inevitable in this case in light of MSP's appeal as of right, there is no good reason not to allow Motorola's claims to be considered at the same time by the court of appeals.  Certification will thus allow issues that are inextricably intertwined to be heard together on appeal, and if the case is remanded, allow for orderly proceedings on the same track.

## CONCLUSION

For the foregoing reasons, the Court should grant Motorola's motion for reconsideration and dismiss the FAC's claims under the Wiretap Act (Count VII), Chapter 93A (Count II) and for breach of implied warranty of merchantability (Count IV), or, alternatively, grant Motorola's motion for certification under 28 U.S.C. § 1292(b).

Dated:  April 25, 2025                          Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

Michael Kim Krouse
Lori B. Leskin
250 West 55th Street
New York, NY 10019
Tel.: 212.836.8000
Fax: 212.836.8689
michael.krouse@arnoldporter.com
lori.leskin@arnoldporter.com

12

**TODD & WELD LLP**

*/s/ Howard M. Cooper*
Howard M. Cooper
One Federal Street
27th Floor
Boston, MA 02110
Tel.: 617-832-1269
hcooper@toddweld.com

*Counsel for Defendants Motorola Solutions, Inc. and
Callyo 2009 Corp.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 25, 2025, a copy of the foregoing was electronically filed with the Clerk of Court of the United States District Court for the District of Massachusetts, using the CM/ECF system, which will send a Notice of Electronic filing to all parties of record.

*/s/ Howard M. Cooper*
Howard M. Cooper
