UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, AND DENNIS WILLIAMS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 4:24-cv-40030-MRG |
| MOTOROLA SOLUTIONS, INC., CALLYO 2009 CORP., SHI INTERNATIONAL CORP., and COLONEL GEOFFREY D. NOBLE, Superintendent of the Massachusetts State Police, in his official capacity, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION AND CERTIFICATION UNDER 28 U.S.C. § 1292(b) (ECF. NO. 86)**

**GUZMAN, J.**

**I.     BACKGROUND**

Plaintiffs, Jason Courtemanche, Brett Foresman, Juan Rios, and Dennis Williams, individually and on behalf of a class or classes of similarly situated persons (hereinafter "Plaintiffs") bring this action against Defendants, Motorola Solutions, Inc. ("Motorola Solutions") and Callyo 2009 Corp. ("Callyo," together with Motorola Solutions, "Motorola"), and Colonel Geoffrey D. Noble, Superintendent of the Massachusetts State Police ("MSP"), in his official capacity ("Defendant Noble"). Plaintiffs' Amended Complaint alleges that MSP, utilizing Motorola products/intercepting devices, unlawfully recorded Plaintiffs and failed to disclose these

recordings in Plaintiffs' subsequent criminal prosecutions. [Am. Compl., ECF No. 8 ¶¶ 1–4]. On March 28, 2025, this Court issued a Memorandum and Order on Defendants' motions to dismiss. [ECF No. 72, ("MTD Order")]. In the MTD Order, this Court granted Motorola's motion to dismiss as to Counts I, II and V, but declined to dismiss several counts against Motorola, including Count II (violation of Mass. Gen. Laws ch. 93A ("Chapter 93A")), Count IV (breach of implied warranty of merchantability), and Count VII (violation of Mass. Gen. Laws ch. 272 § 99 ("Wiretap Act")). [ECF No. 72 at 2]. Motorola now requests this Court to reconsider its MTD Order with respect to Plaintiffs' claims in Counts II, IV, and VII. [ECF Nos. 85 & 86]. As grounds, Motorola asserts that this Court's denial of the motion to dismiss those claims was based on misapprehensions of law. [ECF No. 86 at 5[1]]. Alternatively, Motorola requests certification of the MTD Order for interlocutory review under 28 U.S.C. § 1292(b), so that the First Circuit Court of Appeals can decide these issues along with the appeal brought by Motorola's co-defendant, Colonel Geoffrey D. Noble, Superintendent of the Massachusetts State Police ("MSP"). [Id.] Motorola has also filed a Notice of Supplemental Authorities, bringing the Court's attention to the recently-decided Supreme Court case Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos, 145 S. Ct. 1556 (2025). [ECF No. 100].

For the reasons set forth below, Motorola's motion, [ECF No. 85], is **DENIED IN PART** as to reconsideration and **GRANTED IN PART** as to certification of an interlocutory appeal.

### A. Relevant Facts

The Court presumes familiarity with the underlying facts alleged in the Amended Complaint that were summarized in the Court's MTD Order granting in part and denying in part

---

[1] All page numbers refer to the CM/ECF docket pagination rather than page numbers appearing in the document.

Defendant's motion to dismiss. See Courtemanche v. Motorola Sols., Inc., 774 F. Supp. 3d 289 (D. Mass. 2025); [ECF No. 72]. Below, the Court summarizes the portions of the MTD Order that are relevant to Motorola's present motion. The Court will apply the legal standards for a motion for reconsideration and a motion for certification of interlocutory appeal and detail the questions it finds appropriate for certification.

### B. Procedural History

Plaintiffs filed the initial complaint on February 22, 2024. [ECF No. 1]. Plaintiffs then filed the present Amended Complaint on April 17, 2024. [Am. Compl., ECF No. 8]. The Court entered the MTD Order on March 28, 2025, granting in part and denying in part Defendants' motions. [ECF No. 72]. On April 18, 2025, Defendant Noble filed a notice of appeal of the MTD Order. [ECF No. 75 (USCA Case Number 25-1386)]. On April 25, 2025, Defendant Noble moved for relief from the MTD Order under Fed. R. Civ. P. 60(b)(6), [ECF No. 83], which this Court denied, [ECF No. 97]. Noble also moved for a stay pending appeal, [ECF No. 90], which this Court denied, [ECF No. 97]. Motorola filed the present motion for reconsideration or certification of interlocutory appeal on April 25, 2025. [ECF No. 85]. Plaintiffs filed their opposition to the motion on May 8, 2025. [ECF No. 92]. On June 17, 2025, Motorola filed a Notice of Supplemental Authorities, arguing the recent Supreme Court case, Smith & Wesson Brands, constitutes a change in law that undermines the Court's finding that Motorola could be liable for aiding and abetting MSP's violations of the Wiretap Act. [ECF No. 100]; see 145 S. Ct. 1556.

## II.     LEGAL STANDARDS

### A. Motion for Reconsideration

Motorola does not identify the basis for its motion for reconsideration; however, "it is well established that the two primary standards for reconsideration under Fed. R. Civ. P. 59(e) and 60

3

are not available where, as here, a court denied or denied, in part, a motion to dismiss." Mazza v. City of Bos., No. 24-10333-NMG, 2025 U.S. Dist. LEXIS 80441, at *3 (D. Mass. Apr. 28, 2025) (citing Barrows v. Resol. Trust Corp., No. 94-1555, 1994 U.S. App. LEXIS 32038, at *8 (1st Cir. 1994) ("Rule 59(e) . . . applies only to final judgments") and Farr Man & Co. v. M/V Rozita, 903 F.2d 871, 874 (1st Cir. 1990) ("Rule 60 applies only to final judgments.")); see also First Med. Health Plan, Inc. v. Vega-Ramos, 479 F.3d 46, 50 (1st Cir. 2007) (indicating that the denial of a motion to dismiss is not a final judgment). "In the absence of a specific rule applicable to non-final judgments, district courts retain an 'inherent power' to reconsider and amend prior orders 'at any time' before the entry of final judgment." Mazza, 2025 U.S. Dist. LEXIS 80441, at *3 (quoting Fernandez-Vargas v. Pfizer, 522 F.3d 55, 61 n.2 (1st Cir. 2008)). Motions for reconsideration are granted sparingly. United States ex. rel. Nargol v. Depuy Orthopaedics, Inc., 69 F.4th 1, 11 (1st Cir. 2023). Indeed, the Supreme Court has advised, "courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).

A motion for reconsideration for a non-final order may only be granted when the moving party can "demonstrate that one of three 'limited' circumstances applies by 1) presenting the Court with 'newly discovered evidence,' 2) offering an 'intervening change in applicable law' that is controlling or 3) asserting that the Court's prior order suffers from 'a manifest error of law' or 'was clearly unjust.'" Mazza, 2025 U.S. Dist. LEXIS 80441, at *4 (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)). A motion for reconsideration is not an occasion for parties to "'rehash arguments previously rejected or to raise ones that' could or should have been made before a judgment was issued." Karimpour v. Stanley Black & Decker, Inc., No. 21-11498-NMG, 2025

4

U.S. Dist. LEXIS 49437, at *4 (D. Mass. Mar. 18, 2025) (quoting Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 9 (1st Cir. 2012)). Mere disagreement with the reasoning or outcome of a judicial decision does not warrant reconsideration. Ofori v. Ruby Tuesday, Inc., 205 Fed. App'x 851, 852-53 (1st Cir. 2006); Mazza, 2025 U.S. Dist. LEXIS 80441, at *4.

### B. Motion for Certification for Interlocutory Review under 28 U.S.C. § 1292(b)

An otherwise non-appealable order for interlocutory review can be certified by a district court "if the order 1) involves a controlling question of law 2) as to which there are grounds for a substantial difference of opinion and 3) an immediate appeal would materially advance the ultimate termination of the litigation." Meijer, Inc. v. Ranbaxy Inc., 245 F. Supp. 3d 312, 314–15 (D. Mass. 2017) (citing 28 U.S.C. § 1292(b); Caraballo–Seda v. Mun. of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005)). The First Circuit generally "will not certify interlocutory appeals from a denial of a motion dismiss." Meijer, Inc., 245 F. Supp. 3d at 315 (citing Caraballo–Seda, 395 F.3d at 9). However, an interlocutory appeal can be necessary "in long-drawn-out cases, such as antitrust and conspiracy cases." Meijer, Inc., 245 F. Supp. 3d at 315 (quoting Milbert v. Bison Lab'ys. Inc., 260 F.2d 431, 433 (3rd Cir. 1958)).

First, a question of law is considered "controlling" if it's reversal would resolve the entire action. Meijer, Inc., 245 F. Supp. 3d at 315 (citing Philip Morris Inc. v. Harshbarger, 957 F.Supp. 327, 330 (D. Mass. 1997)). These questions "typically implicate a pure legal principle that can be resolved without extensive consultation to the record." Meijer, Inc., 245 F. Supp. 3d at 315 (citing S. Orange Chiropractic Ctr., LLC v. Cayan LLC, No. 15-13069-PBS, 2016 U.S. Dist. LEXIS 70680, at *2 (D. Mass. May 31, 2016)).

Second, the requirement that an appeal must materially advance the final resolution of the case is "closely tied" to the controlling question of law component of the analysis. Meijer, Inc.,

245 F. Supp. 3d at 315 (citing Philip Morris, 957 F. Supp. at 330). This condition is met if overturning the Court's decision advances the final resolution of the case. Meijer, Inc, 245 F. Supp. 3d at 315 (citing United Air Lines, Inc. v. Gregory, 716 F.Supp.2d 79, 92 (D. Mass. 2010)).

And third, a substantial ground for a difference of opinion exists when an issue involves "'one or more difficult and pivotal questions of law not settled by controlling authority.'" Meijer, Inc. v. Ranbaxy Inc., 245 F. Supp. 3d at 315 (quoting Philip Morris Inc., 957 F. Supp. at 330). The issue "must involve a legal principle[,]" not "an application of a legal principle to a unique set of facts." Meijer, Inc. v. Ranbaxy Inc., 245 F. Supp. 3d at 315 (citing United Air Lines Inc., 716 F.Supp.2d at 92).

Certification under § 1292(b) is "an extraordinary procedure[,]" and the "heavy burden" rests on the party seeking it. United Air Lines, Inc., 716 F. Supp. 2d at 89. That party must show that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (citation omitted).

### III.  DISCUSSION

In the MTD Order, this Court denied Motorola's motions to dismiss Count II (violation of Chapter 93A), Count IV (breach of implied warranty of merchantability), and Count VII (violation of the Massachusetts Wiretap Act). [ECF No. 72 at 2]. Plaintiffs alleged that Motorola & Callyo designed and manufactured certain recording devices (namely, the "10-21" and "Mobile Body Bug" applications, together the "Callyo apps"), that Motorola sells exclusively to police departments and other law enforcement agencies to assist with investigations and community interactions. [Am. Compl. ¶¶ 25, 28]. These applications, when coupled with a mobile telephone, are capable of intercepting, transmitting, receiving, amplifying, recording, storing, and

6

reproducing oral communications. [Id. ¶ 28]. The two applications facilitate surreptitious recordings as they record without notice as a default setting. [See id. ¶ 66]. Motorola's marketing of 10-21 states that it is "hidden in plain sight technology [that] makes body wires a thing of the past" and that it comes with a "Conceal Camera Preview" feature which "[d]isables your video preview while streaming to avoid detection." [Id. ¶¶ 80–81]. The named Plaintiffs are four individuals residing in Worcester County, Massachusetts, who allege that, in connection with its police investigations, MSP used the Motorola products to secretly record Plaintiffs' oral communications without their consent and without first obtaining a warrant. [Id. ¶¶ 35–46]. Since in or about 2017, in at least 181 known situations, MSP brought criminal charges against individuals who they had secretly recorded using Motorola applications. [Id. ¶ 4]. These secret recordings were never produced to prosecuting agencies, and the existence of these secret recordings was not disclosed to Plaintiffs until March of 2023. [Id.] In essence, Plaintiffs allege that the MSP, aided by Motorola, carried-out surreptitious audio and video recordings of Plaintiffs, in violation of their rights.

      The Court's order rested in large part on Plaintiff's allegation that MSP notified Motorola in 2017 that the Callyo App's default record settings were in violation of the Wiretap Act, that Motorola did not make any changes to its products after notification, and that it was foreseeable to Motorola that MSP officers were using the apps to make illegal secret recordings. [ECF No. 72]. Plaintiffs allege that in or about 2017, Motorola met with representatives of MSP concerning its sale of intercepting devices and data-storage services to MSP. [Am. Compl. ¶ 50]. At these meetings, MSP informed Motorola that its intercepting devices, i.e. the Callyo apps, failed to comply with the Massachusetts two-party consent law (the Wiretap Act). [Id. ¶ 51]. Motorola did

7

not modify the Callyo apps to bring them into compliance with Massachusetts law and continued to sell the apps to MSP. [Id. ¶ 52].

The Court denied the dismissal of the three claims in question based, in part, on the grounds that: (1) the Motorola recording devices in question were allegedly unlawful by design due to their default settings, which recorded automatically without notice; and (2) that, drawing all inferences in favor of the Plaintiffs, it was reasonably foreseeable to Motorola that MSP was using its products to unlawfully record Plaintiffs' communications for use in criminal prosecutions because MSP relayed to Motorola that MSP officers using the default features of the Callyo apps were making recordings without warrants. [ECF No. 72 at 11–12 (discussing foreseeability and intervening causes), 15–26 (Chapter 93A); 26–31 (implied warranty)].[2] In the MTD Order, the Court recognized the precariousness of the issue concerning Motorola's actual or constructive knowledge of the constitutional violations created by MSP's secret recordings, noting that the allegations were "just barely enough to cross into 'plausibility' required to state a claim at a motion to dismiss." [ECF No. 72 at 25]. The Court concluded that it "cannot at this early stage of the case state that Plaintiffs would be unable to prove a set of facts that will provide a jury question on the issue of foreseeability." [ECF No. 72 at 11–12].

A. **Reconsideration**

Motorola's motion for reconsideration must fail because Motorola already raised the same arguments in its original motion to dismiss; however, as explained below, the Court will certify this decision for interlocutory appeal. The thrust of Motorola's argument upon reconsideration is that the Court failed to consider the exceptions to the Wiretap Act that allow law enforcement

---

[2] Regarding the Wiretap Act claim, the Court found Plaintiffs had adequately alleged that Motorola violated the Wiretap Act through an aiding and abetting theory. [ECF No. 72 at 32-34].

8

officers to make recordings without two-party consent. [ECF No. 86 at 7]. Essentially Motorola asserts that the Callyo apps are not per se illegal. For example, Motorola argues it would have been lawful for MSP officers to record without notice (1) after obtaining a warrant, (2) in connection with an organized crime investigation, or (3) to ensure the safety of undercover law enforcement officers. See Mass. Gen. Laws ch. 272, § 99(B)(4), (7), (D)(1)(d)-(e); [ECF No. 86 at 7–8]. Motorola advanced the same argument in its memorandum in support of its motion to dismiss. [See ECF No. 30 at 20]. The Court notes it considered the exceptions but found them irrelevant to the allegations of the Amended Complaint. First, the Amended Complaint alleges use of the recording apps explicitly without a warrant. There was no mention of the apps being used for organized crime investigations, and neither MSP nor Motorola raised that defense. MSP did raise the defense that the recordings were made for officer safety, but this Court took judicial notice of Judge LoConto's Fitchburg District Court opinion in a related case that rejected this argument. After a series of evidentiary hearings, in July 2024, Judge LoConto granted a motion for a new trial brought by some of the 181 defendants subjected to covert recordings, finding that MSP officers utilized the Callyo apps for evidentiary purposes and their secret recordings of defendants violated the Wiretap Act. [ECF No. 57-3 (Mem. & Order, Commonwealth v. Aponte, No. 2216CR000495, (Mass. Dist. Ct. July 8, 2024)]. Judge LoConto explicitly refused to credit MSP's explanation that the Callyo recordings were made for officer safety. [Id. at 9]. Motorola also previously raised its arguments that MSP's unlawful usage of the Callyo apps was not foreseeable to Motorola, [ECF No. 30 at 24–25], which the Court rejected in the MTD Order, [ECF No. 72 at 10–11, 24–25, 30].[3]

---

[3] More specifically, in one section of the MTD Order, the Court found:

Motorola fails to meet any of the three limited circumstances when reconsideration is appropriate, see Mazza, 2025 U.S. Dist. LEXIS 80441, at *4 (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)), and instead "'rehash[es] arguments previously rejected," Karimpour, 2025 U.S. Dist. LEXIS 49437, at *4 (citation omitted). Accordingly, the motion for reconsideration is denied.

**B.     Certification for Interlocutory Appeal**

The Court does, however, find that Motorola has appropriately raised a question for interlocutory appeal. The issue is whether a company that sells recording devices to law enforcement that have a default record setting that may be turned off—in a jurisdiction where one-party consent is sometimes sufficient—can be held legally liable for the allegedly unlawful recording. **More precisely, the core question is whether Plaintiffs have adequately alleged that Motorola's recording devices are *per se* unlawful and that it was foreseeable to Motorola that its devices would be used unlawfully by MSP to record Plaintiffs.**

The Court's belief that Motorola's default record settings made the Callyo Apps legally noncompliant underpinned its reasoning for its denial of Motorola's motion to dismiss Plaintiff's Wiretap Act, Chapter 93A, and implied warranty claims. For example, the Court recognized Plaintiffs' regulatory noncompliance theory for their Chapter 93A claim, noting,

> Motorola's alleged conduct was within the penumbra of unfair conduct established by statute, namely the Wiretap Act, and once Motorola was put on notice of such

> Motorola should have recognized, after the 2017 meeting with MSP, that the default record setting of the Callyo apps was resulting in MSP officers secretly recording members of the public in pursuit of criminal investigations, particularly because that is exactly how Motorola marketed and sold these products to its target customers: law enforcement agencies. Further, it is a reasonable inference at the motion to dismiss stage that Motorola's failure to recall or modify the products would foreseeably result in such actions continuing unabated.

[ECF No. 72 at 25].

> by MSP in 2017, [Am. Compl. ¶¶ 50–52], it was unethical and unscrupulous for Motorola to continue to market and sell the Callyo apps without remedying the apps' noncompliance, despite notice that use of the apps was resulting in unlawful conduct due to its default setting of recording without notice.

[ECF No. 72 at 17 (discussing whether Plaintiffs' had adequately alleged unfair conduct under the factors originating with PMP Assoc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). Further, for Plaintiffs' implied warranty claim against Motorola, the Court found that Plaintiffs had sufficiently alleged that "the Callyo apps' default record setting was a defect that made the Motorola products unfit for their ordinary use in law enforcement because the apps did not comply with Massachusetts' two-party consent law." [See Am. Compl. ¶¶ 51, 65–66, 179–80]; [ECF No. 72 at 29]. Each of Plaintiffs' claims required that MSP's unlawful use of the Callyo apps was foreseeable to Motorola, an element the Court found Plaintiffs had "barely" met under the 12(b)(6) standard. [ECF No. 72 at 11, 24, 30].

If the First Circuit were to answer the question in the negative and find that Motorola's apps were not out of compliance with the Wiretap Act and that MSP officers' actions were not foreseeable to Motorola (as gauged on a 12(b)(6) standard), all three of Plaintiffs surviving claims against Motorola would fail. Accordingly, the first element of certification for interlocutory review is met – the question is "controlling" because its "reversal would terminate the action." Meijer, Inc, 245 F. Supp. 3d at 315 (citation omitted). The question raises "a pure legal principle that can be resolved without extensive consultation to the record." Id. First, whether the existence of limited exceptions to the Wiretap Act's prohibition on covert recordings invalidates a finding that the Callyo apps' default record settings made the apps legally noncompliant. And second, whether Plaintiffs' allegation of the 2017 meeting with Motorola, [Am. Comp. ¶¶ 50–52], suffices to

establish foreseeability at the 12(b)(6) stage.[4] Additionally, the Court acknowledges that there is a "substantial ground for difference of opinion," Meijer, Inc, 245 F. Supp. 3d at 315, for the reasons raised by Motorola, [see ECF No. 86 at 4, 6, 9–10 (discussing Du and Aponte decisions]. Finally, as discussed with the first element, the third requirement certification of interlocutory appeal is met because "reversal of the Court's decision advances the termination of the litigation." Meijer, Inc, 245 F. Supp. 3d at 315.

Certification for interlocutory review is especially appropriate in this case because Motorola's co-defendant, Colonel Noble, has already appealed the detail of his motion to dismiss. [ECF No. 75, 79 (USCA Case Number 25-1386)]. Certification here promotes judicial economy as many of Plaintiffs' claims against Motorola are intertwined with MSP's actions. It is most efficient for the First Circuit to consider both Defendants' claims together.

1. **Secondary Questions for Review**

Should the First Circuit review the question above, it may also choose to consider two other legal questions implicated by Motorola's motion. First, what level of relationship is required for the commercial link element of a Chapter 93A Section 9 claim? And, second, whether the Supreme Court's discussion of federal criminal aiding and abetting liability in Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos, has any import on civil aiding and abetting liability. See 145 S. Ct. at 1562.

   a. **Commercial Link under Chapter 93A**

Chapter 93A prohibits "'[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Valley Children's Hosp. v. Athenahealth,

---

[4] While resolving this will require some *minimal* consultation to the record (mostly limited to paragraphs 50-52 of the Amended Complaint, ECF No. 8), the Court believes that such consultation will not be "extensive." See Meijer, Inc, 245 F. Supp. 3d at 315 (citation omitted).

12

Inc., No. 22-cv-10689-DJC, 2023 WL 6065800 at *2 (D. Mass. Sept. 18, 2023) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005)); Mass. Gen. Laws ch. 93A, § 2(a). To prevail on a Chapter 93A claim, a plaintiff "must show '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.'" Gottlieb v. Amica Mut. Ins. Co., 57 F.4th 1, 10 (1st Cir. 2020) (quoting Tomasella v. Nestle USA Inc., 962 F.3d 60, 71 (1st. Cir. 2020)). Further, in the MTD Order, the Court required that Plaintiffs establish a commercial link between themselves and Motorola. The MTD Order stated,

> Although "indirect purchasers can bring a cause of action under [Chapter] 93A," Ciardi v. F. Hoffmann La Roche, Ltd., 762 N.E.2d 303, 313 (Mass. 2002), to properly allege a claim under Chapter 93A § 9, a plaintiff must demonstrate that "some business, commercial, or transactional relationship" exists between the plaintiff and the defendant. Ryan v. Greif, Inc., 708 F. Supp. 3d 148, 179 (D. Mass. 2023) (quoting Steinmetz v. Coyle & Caron, Inc. (In re Steinmetz), 862 F.3d 128, 141 (1st Cir. 2017)). While consumer actions under § 9 have a "lower burden in establishing a commercial relationship than an action between two businesses under [§] 11[,]" a commercial link must still exist between the plaintiff consumer and the defendant engaged in commerce. Id. (citing Begelfer v. Najarian, 409 N.E.2d 167, 190–191 (1980)).

[ECF No. 72 at 16].

This Court found that Plaintiffs had plausibly alleged the elements necessary for their 93A claim. [ECF No. 72 at 16]. First, the unfair act or practice on the part of the seller was established based the theory that Motorola knowingly continued to sell and market products that failed to comply with the Wiretap Act, even after becoming aware of their noncompliance. [Id. at 16–17]. Second, the Court found the required injury through Plaintiffs allegations of loss of liberty and freedom resulting from their criminal trials, as well as the financial loss associated with those proceedings, namely, violations of their constitutional right to procedural due process [Id. at 22].

13

The Court found that this injury was cognizable under Chapter 93A because constitutional violations are treated as personal injury claims, and personal injuries caused by an unfair or deceptive act are recoverable under Chapter 93A, "even if the consumer lost no 'money' or 'property.'" Hershenow v. Enter. Rent-A-Car Co. of Bos., 840 N.E.2d 526, 533 (Mass. 2006) (quoting Haddad v. Gonzalez, 576 N.E.2d 658, 664 (Mass. 1991)).

Third, the Court found Plaintiffs had sufficiently established causation under Chapter 93A. Motorola's unfair conduct under the regulatory noncompliance theory articulated above was the factual, or "but-for" cause of Plaintiffs' injuries. But-for Motorola's manufacturing and sale of the Callyo apps, not to mention its failure to recall or modify those products, MSP officers would not have been able to make the covert recordings of the Plaintiffs in the first place. [ECF No. 72 at 24]. The Court noted that Plaintiffs established proximate causation through their allegations that their injuries were foreseeable to Motorola after its 2017 meeting with MSP where MSP informed Motorola that the Callyo apps did not comply with the Wiretap Act. [Id.]

The question for interlocutory review concerns the requirement for the commercial relationship: **what level of connection is required for an *indirect* commercial relationship between a plaintiff and defendant under Chapter 93A § 9?** The language of Chapter 93A allows "*any* person who has been injured by trade or commerce *indirectly* affecting the people of this Commonwealth to bring a cause of action." Ciardi v. F. Hoffmann La Roche, Ltd., 762 N.E.2d 303, 309–10 (Mass. 2002); Mass. Gen. Laws ch. 93A, §§ 1, 9(1). Although some business, commercial, or transactional relationship is required, "there is no requirement of contractual privity between the plaintiff and the defendants under G. L. c. 93A, § 9." Id. at 310 (citing Kattar v. Demoulas, 739 N.E.2d 246, 258 (Mass. 2000)).

14

This Court found that Plaintiffs met their burden on establishing an indirect commercial relationship because plaintiffs suing under Chapter 93A § 9 can include indirect purchasers of upstream defendants' products. Ciardi, 762 N.E.2d at 309-10; Moniz v. Bayer Corp., 484 F. Supp. 2d 228, 230 (D. Mass. 2007); [ECF No. 72 at 19–20]. The MTD Order compared the present case to the facts of two other cases, Ciardi and Moniz.

> Similarly to the defendant in Ciardi, Motorola manufactured, produced, distributed, and sold the products at issue. See Ciardi, 762 N.E.2d at 306. Further, in Moniz, the court found the requisite commercial relationship even where the defendants were upstream manufacturers of raw materials that were later incorporated into finished consumer goods by other industrial manufacturers. Moniz, 484 F. Supp. 2d at 230–31. Motorola is not only the upstream manufacturer of the products at issue here, it also directly engages in marketing and sales of those products, which is a facet of commerce that indirectly affects the Plaintiffs. See Ciardi, 762 N.E2d at 309.

[ECF No. 72 at 20]. Alternatively, the Court found that the Plaintiffs established the commercial link with Motorola, albeit indirectly, by virtue of MSP's contract with Motorola. "While Plaintiffs are not direct purchasers of the Motorola products at issue, the MSP-Motorola commercial contract was undertaken by a state agency purportedly working in service of the public, including Plaintiffs." [Id.]

This question controls the success of Plaintiffs' Chapter 93A claim and would materially advance the ultimate termination of the litigation, it is a pure question of law, and there is substantial ground for a difference of opinion on the level of connection required for an indirect commercial relationship, indicated by the lack of controlling authority on the issue. Accordingly, certification for interlocutory appeal is warranted. See 28 U.S.C. § 1292(b).

### b. Aiding & Abetting Liability Post-*Smith & Wesson*

In the MTD Order, the Court ruled that Plaintiffs had sufficiently alleged Count VII, holding that Motorola had violated the Massachusetts Wiretap Act through a theory of aiding and

15

abetting. [ECF No. 72 at 32-33]. The word "aid" is not defined by the Wiretap Act and Massachusetts courts have not specifically analyzed its meaning in case law. While the Wiretap Act has both criminal and civil applications, the SJC has held that the mens rea of "willful" that is required for the criminal provision of the statute does not extend to civil actions authorized by the Act. Pine v. Rust, 535 N.E.2d 1247, 1249 (Mass. 1989)[5] ("To be actionable under § 99 Q, then, an interception need not rise to the level of criminal conduct covered by the penal provisions of the law."); Gouin v. Gouin, 249 F. Supp. 2d 62, 79 (D. Mass. 2003) (denying motion to dismiss Wiretap Act claim). Instead, the Court drew from civil common law and applied the elements of aiding and abetting a tort, which, under Massachusetts law, require Plaintiffs to show: (1) that the principal defendant committed the relevant tort; (2) that the aider or abettor knew the principal was committing the tort; and (3) that the aider or abettor actively participated in or substantially assisted in the principal's commission of the tort. Go-Best Assets, Ltd. v. Citizens Bank, 972 N.E.2d 426, 438 (Mass. 2012) (citing Arcidi v. NAGE, Inc., 856 N.E.2d 167, 174 (Mass. 2006); Restatement (Second) of Torts § 876 (b) (1977)). [ECF No. 72 at 33].

In the MTD Order, this Court found that MSP had violated the "relevant tort," i.e., the Wiretap Act; that "Plaintiffs sufficiently allege that Motorola knew, actually or constructively, that MSP was committing Wiretap Act violations through usage of the Callyo apps"; and that "Plaintiffs have sufficiently alleged the third element that Motorola substantially assisted MSP in

---

[5] In Pine v. Rust, the SJC affirmed liability under the Wiretap Act for defendants that not only included the principal person who actually made the secret recordings at issue, but also her brother, who merely loaned the principal his tape recorder in furtherance of the recording. 535 N.E.2d at 1249. Pine supports the proposition that liability under the Wiretap Act extends not only to those making a secret recording, but also to those who "aid" a violation by knowingly supplying the instrumentality or means by which the recording is made. Here, "knowledge" refers to knowledge that the instrumentality will be used to make a covert recording.

16

violating the Wiretap Act by providing the intercepting devices through which MSP made the secret recordings and by maintaining/storing the recordings on the cloud." [ECF No. 72 at 34].

On June 5, 2025 the Supreme Court issued its opinion in Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos, addressing gun manufacture liability for aiding and abetting under a predicate exception to the Protection of Lawful Commerce in Arms Act (PLCAA). The PLCAA generally shields gun manufacturers from liability arising from "criminal or unlawful misuse of a firearm by a third party[,]" however, plaintiff's theory proceeded under the statute's predicate exception, which permits liability where the gun manufacture allegedly aids and abets a federal firearms offense – here, the federal criminal aiding and abetting statute, 18 U.S.C. § 2(a). Smith & Wesson, 145 S. Ct. at 1562 (internal citations omitted). In the case, the plaintiff, the Government of Mexico, alleged gun manufacturers violated this exception by supplying guns to retailers "whom they know illegally sell to Mexican gun traffickers." Id. at 1564.

The facts in Smith & Wesson are analogous to this case in several ways. In both cases, the Plaintiffs allege liability for upstream manufacturers when the manufacturers know that downstream consumers of their products are using the products in illegal ways. Plaintiffs in both cases allege that the manufacturers made targeted marketing and design decisions that stimulate demand for their products amongst those customers using the products unlawfully. And in both cases, the Plaintiffs claim the manufacturers have failed to impose controls that would prevent the illegal usage of their products. In Smith & Wesson, Mexico claimed the gun manufacturers aided and abetted retailers' unlawful sales to drug cartels by supplying the retailers with firearms despite knowing that the retailers were engaged in the unlawful resales. Id. Similarly here, Plaintiffs assert that Motorola manufactured and sold the Callyo apps to MSP, despite being on notice that MSP officers were utilizing the products in violation of the Wiretap Act. [ECF No. 72 at 3-5]. However,

a key distinction between these two cases is the legal framework under which Plaintiffs' claims arise. The Plaintiff in Smith & Wesson alleged violations of the predicate exception to the PLCAA through the federal criminal aiding and abetting statute, 18 U.S.C. § 2(a). 145 S. Ct. at 1562. In the present case, Plaintiffs allege Motorola is liable for aiding and abetting MSP's violation of the Wiretap Act. But unlike in Smith & Wesson, the Wiretap Act does not define aiding and abetting, which prompted this Court to apply a civil, rather than criminal, standard for aiding and abetting. [ECF No. 72 at 32–33].

Ultimately, the Supreme Court in Smith & Wesson held that Mexico failed to allege that the gun manufacturers were liable for *criminal* aiding and abetting under 18 U.S.C. § 2(a), such that the predicate exception of the PLCAA did not apply. The opinion included broad commentary about aiding and abetting liability that could have implications on civil aiding and abetting liability. 145 S. Ct. at 1565-67. In its discussion, the Court emphasized that "[a]bsent an independent duty to act, a person's failure[s], omissions, or inactions—even if in some sense blameworthy—will rarely support aiding-and-abetting liability." Id. at 1566 (internal citations omitted). The Court further clarified that a supplier is not liable for a third party's criminal misuse conduct unless it took affirmative steps to "promote the resulting crime and make it his own." Id. (internal citations omitted). Notably, the Supreme Court stated, "[w]hen a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet. . . . And that is so even if the company could adopt measures to reduce their users' downstream crimes. Id. at 1567 (quoting Twitter, Inc. v. Taamneh, 598 U. S. 471, 502–03 (2023)). In summary, even though the manufacturing defendants had knowledge that their guns were being used by third parties for unlawful purposes, to find aiding and abetting, the Complaint needed to allege that the

manufacturers actively desired to the outcome of such illegal third-party conduct. 145 S. Ct. at 1567.

This raises a key legal question for interlocutory appeal: **does the Supreme Court's holding on aiding and abetting liability for product manufacturers in <u>Smith & Wesson</u> extend beyond the criminal context?** Just as the gun manufacturer-defendants, Motorola maintained a relationship with MSP, whose officers engaged in unlawful wiretapping using Motorola's services. [ECF No. 72 at 5]. In both instances, the companies operated at arm's length and remained passive and indifferent to the misuse of their products. [ECF No. 72 at 4-5]; <u>Smith & Wesson</u>, 145 S. Ct. at 1567–68. Most notably, the gun manufacturers had knowledge that their firearms were being trafficked illegally but failed to take any affirmative steps to prevent it. <u>Smith & Wesson</u>, 145 S. Ct. at 1568. Likewise, Motorola was on notice that MSP was misusing its services to conduct illegal surveillance, yet took no action. [ECF No. 72 at 3-4]. Although the Supreme Court held that the gun manufacturers did not aid and abet *criminal* conduct, the analysis occurred within a framework of civil liability under the PLCAA.  This Court seeks clarification as to whether any of the Supreme Court's reasoning on aiding and abetting extends to civil aiding and abetting outside of the PLCAA. Considering the recent issuance of this case and the absence of interpretive precedent, this Court has little guidance on the general applicability of the holding to other statutory contexts.

The question above satisfies the standard for interlocutory review under 28 U.S.C. § 1292(b). First, the issue involves a controlling question of law because resolution of it could dispose of Plaintiff's Count VII claim. If <u>Smith & Wesson</u> alters the standard of civil aiding and abetting liability, the Court's previous ruling on the sufficiency of the pleadings may be reversed. Second, given the recency of the Supreme Court opinion and the lack of citing precedent, its

broader applicability is yet to be understood and may cause a "substantial difference in opinion." Meijer, Inc., 245 F. Supp. 3d at 315. Finally, given the implications of the potential interpretation of Smith & Wesson, an immediate appeal would materially advance the ultimate decision in the litigation." Id. For these reasons the Court certifies this issue for interlocutory review.

### IV. CONCLUSION

For the reasons stated above, Motorola's motion, [ECF No. 85], is **DENIED IN PART** as to reconsideration and **GRANTED IN PART** as to certification of an interlocutory appeal.

**SO ORDERED.**

Dated: August 5, 2025

      /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge