# United States Court of Appeals
## For the First Circuit

No. 25-1386

JASON COURTEMANCHE, BRETT FORESMAN, JUAN RIOS, and DENNIS
WILLIAMS, on behalf of themselves and all others similarly
situated,

Plaintiffs, Appellees,

v.

GEOFFREY D. NOBLE, in their official capacity
as Superintendent of the Massachusetts State Police,

Defendant, Appellant,

and

MOTOROLA SOLUTIONS, CALLYO 2009 CORP., and
SHI INTERNATIONAL CORP.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Margaret R. Guzman, U.S. District Judge]

Before

Aframe, Lipez, and Howard,
Circuit Judges.

Jeffrey T. Collins, Special Assistant Attorney General, with
whom Andrea Joy Campbell, Attorney General of Massachusetts,
Robert Papandrea, and Morgan, Brown & Joy, LLP were on brief, for
appellants.

Erik P. Bartenhagen, with whom Bartenhagen Law, PLLC, James L. O'Connor, Jr., Christopher R. Batinsey, and Christopher J. Walton were on brief, for appellees.

---

May 28, 2026

---

**AFRAME**, <u>Circuit Judge</u>.   Four residents of Worcester County, Massachusetts, (the "plaintiffs") filed this putative class action against Geoffrey D. Noble, in his official capacity as Superintendent of the Massachusetts State Police (the "MSP"), and several private companies.   The Superintendent moved to dismiss the claims against him on several grounds, including sovereign immunity and standing.   The district court denied his motion in part, prompting the Superintendent to file this interlocutory appeal.   We now reverse because the plaintiffs have not alleged an injury in fact with sufficient concreteness or imminence to establish standing.

We summarize the allegations in the first amended complaint (the "complaint"), taking all well-pleaded allegations as true and drawing all reasonable inferences in the plaintiffs' favor.   <u>Douglas</u> v. <u>Hirshon</u>, 63 F.4th 49, 55 (1st Cir. 2023).   We ignore, however, "allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture."   <u>Id.</u> (citation modified).

Since 2017, the MSP has secretly recorded phone conversations between its officers and civilians and then saved those communications to an online database.   From March to May of 2022, the MSP recorded the plaintiffs, among others, without their knowledge or consent.   The MSP used its recordings to identify various individuals, including the plaintiffs, to propose charges

in at least 181 criminal cases.  The MSP did not notify prosecuting agencies about the recordings made in conjunction with these cases. We refer to the MSP's recording and subsequent concealment of the recordings as the MSP's "record-and-withhold" program.

Based on these allegations, the plaintiffs brought nine claims against all the defendants.  We focus our discussion on the two that the plaintiffs asserted against the Superintendent, as only they pertain to this appeal.  First, the plaintiffs alleged that MSP officers violated the Massachusetts Wiretap Act, Mass. Gen. L. c. 272 § 99, by surreptitiously recording the plaintiffs. Second, they alleged, under 42 U.S.C. § 1983, that the MSP violated their rights under the Sixth and Fourteenth Amendments to the United States Constitution by depriving the plaintiffs of "exculpatory evidence at trial," "their right[s] to effective assistance of their counsel," and their rights "to be presented with evidence against them, confront their accusers, and enjoy a fair and impartial trial."

The complaint contains no allegation that the plaintiffs were convicted of the charges derived from the surreptitious recordings, that there were charges pending against the plaintiffs when they filed their complaint, or that such charges were certainly impending.  Instead, the complaint mostly describes the violations underlying the plaintiffs' claims in the past tense except for the final allegation for each count.  Those final

- 4 -

allegations are boilerplate assertions that the plaintiffs have "suffered and continue to suffer substantial past and future harm" because of the MSP's actions.  (Emphasis added).  The plaintiffs request declaratory and injunctive relief for their alleged injuries.

The Superintendent moved to dismiss the plaintiffs' claims based on the Eleventh Amendment's grant of state sovereign immunity.  He further argued that the plaintiffs' § 1983 claim should be dismissed because the plaintiffs lack standing and fail to allege a cognizable constitutional violation.  In response, the plaintiffs voluntarily dismissed the Massachusetts Wiretap Act claim.  They continued, however, to press their § 1983 claim and objected to that portion of the Superintendent's motion to dismiss.

The district court allowed voluntary dismissal of the Massachusetts Wiretap Act claim but denied the Superintendent's motion to dismiss the § 1983 claim.  First, it held that sovereign immunity did not shield the Superintendent because the plaintiffs' § 1983 claim falls within the Ex parte Young exception to state sovereign immunity.  That exception allows a party to circumvent the sovereign immunity bar by suing a state officer in their official capacity and alleging "an ongoing violation of federal law."  Cotto v. Campbell, 126 F.4th 761, 767 (1st Cir. 2025) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)); see generally Ex parte Young, 209 U.S. 123

(1908).  A party bringing such a claim may seek only "relief properly characterized as prospective," as sovereign immunity precludes retrospective remedies.  See Cotto, 126 F.4th at 767-68 (1st Cir. 2025) (quoting Verizon Md., Inc., 535 U.S. at 645).

Second, and most importantly for our purposes, the district court concluded that the plaintiffs had standing to seek prospective relief for these alleged violations as required for a suit to proceed under Ex parte Young.  It based this conclusion on the plaintiffs' allegation that the MSP continues its record-and-withhold program.  The court buttressed this standing determination by recounting an exchange at the hearing on the motion to dismiss.  During that exchange, the Superintendent's counsel expressed uncertainty about whether the MSP had ceased using the recording devices or disposed of the recorded evidence. Based on this statement, the district court asserted that "[u]ntil there is proof or an unequivocal statement" that the MSP ceased recording civilians and disclosed all extant recordings, there remained a "live issue."  Finally, the court held that the plaintiffs adequately alleged their claim under § 1983 because the MSP's record-and-withhold program plausibly violated the Sixth and Fourteenth Amendments.

The Superintendent took an interlocutory appeal and now asks us to review the district court's order with respect to sovereign immunity, standing, and the plausibility of the § 1983

claim.  We have appellate jurisdiction over the district court's sovereign immunity ruling under the collateral order doctrine. See Cotto, 126 F.4th at 767.  And, as the parties agree, we must consider whether the plaintiffs have standing to bring the claim that is properly before us on interlocutory appeal.  See, e.g., Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 46 (1st Cir. 2020); Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores, 484 F.3d 1, 20 & n. 22 (1st Cir. 2007).  The parties dispute, however, whether we may address whether the plaintiffs have plausibly alleged a constitutional violation at this preliminary stage.  We bypass that disagreement because the standing issue is dispositive.

Article III of the United States Constitution limits the federal judicial power to "'Cases' and 'Controversies.'"  Diamond Alt. Energy, LLC v. EPA, 606 U.S. 100, 110 (2025) (quoting U.S. Const. art. III § 2, cl. 1).  Standing doctrine derives from this limitation and ensures that federal courts do not encroach on the domain reserved for the political branches of government.  See Dantzler, Inc., 958 F.3d at 46.  To establish standing, a plaintiff must show that they have "suffered or likely will suffer" a "concrete" injury in fact; that the defendant likely caused, or will cause, their injury; and that a court likely could redress that injury.  FDA v. All. for Hippocratic Med., 602 U.S. 367,

- 7 -

380-81 (2024).  "The party invoking federal jurisdiction bears the burden of establishing" standing.  Lujan v. Def. of Wildlife, 504 U.S. 555, 561 (1992).

The plaintiffs' complaint, which speaks almost entirely in the past tense, could establish standing for retrospective relief related to their past prosecutions to the extent that they were affected by the record-and-withhold program.  However, retrospective relief is unavailable here; the plaintiffs may seek only prospective relief consistent with the Eleventh Amendment and Ex parte Young.  See Cotto, 126 F.4th at 767-68.  And so, because a party must establish standing with respect to the form of relief sought, the plaintiffs must establish standing for a prospective remedy.  See TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021).

Where a plaintiff seeks prospective relief, the requirement that they "likely will suffer" a concrete injury in fact is often the sticking point for standing.  All. for Hippocratic Med., 602 U.S. at 380; see id. at 381.  This requirement is divided into two components.  First, the plaintiff's alleged injury must be "concrete" and "particularized," rather than a "generalized grievance."  Id. at 381 (citations omitted).  And while the injury may be commonly shared or widespread, the plaintiff must show that the asserted injury harmed them "personal[ly]" and individually.  Massachusetts v. EPA, 549 U.S. 497, 517 (quoting Lujan, 504 U.S. at 581 (Kennedy,

- 8 -

J., concurring)).  The second component requires that the alleged harm be likely to occur, or "imminent."  All. for Hippocratic Med., 602 U.S. at 381.  In this respect, the plaintiff must show a "substantial risk" of injury or that their injury is "certainly impending."  Susan B. Anthony List, v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)).  By contrast, where an alleged harm is merely "hypothetical" or "speculative," the party asserting that injury will lack standing.  Clapper, 568 U.S. at 401-02.

Here, the district court concluded that the plaintiffs demonstrated standing to pursue their § 1983 claim because the MSP failed to acknowledge that it had ceased making surreptitious recordings and that all recordings had been disclosed to prosecutors.[1]  This omission does not suffice to create an injury in fact.

_____

[1]    In its order denying the Superintendent's motion to dismiss, the district court appeared to place the burden on the Superintendent to show that there no longer remained a "live" controversy.  That analysis implicates mootness, not standing. Indeed, the mootness doctrine applies "when the issues presented are no longer live," and places the burden of establishing that the case is moot on "the party invoking the doctrine," which is often the "defendant[]."  See ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (citation modified) (emphasis added).  But at this stage in the litigation, it would be premature to examine whether the MSP cancelled its record-and-withhold program, thereby mooting the plaintiffs' § 1983 claim.  The plaintiffs first must allege that a case or controversy existed when they brought their complaint before the MSP can be tasked with demonstrating that a case or controversy no longer exists.  See Ramírez v. Sánchez-Ramos, 438 F.3d 92, 97, 100

- 9 -

As an initial matter, even if the MSP's record-and-withhold program is ongoing, the plaintiffs' forward-facing allegations amount to nothing more than a "generalized grievance" that the program violates the law. All. for Hippocratic Med., 602 U.S. at 381. They do not explain how the record-and-withhold program will specifically affect them in a way that differentiates them from any other person in Massachusetts with "general legal, moral, ideological, and policy concerns" about the program. Id. at 386.

The Supreme Court's decision in O'Shea v. Littleton is instructive here. See 414 U.S. 488 (1974). There, several individuals purporting to represent a class sued a county magistrate and associate judge to enjoin alleged violations of their First, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights through the officials' conduct, including illegal bond setting, sentencing, and jury fee practices in criminal cases. Id. at 490-92. The Court held that the individuals lacked standing because their complaint alleged violations "in only the most general terms" and lacked reference to "specific instances of misconduct with respect to particular individuals." Id. at 495. So too here. The plaintiffs have drawn attention to what may well

---

(1st Cir. 2006). Put another way, failure to show the cessation of conduct does not demonstrate standing. And as we explain, the plaintiffs did not set forth allegations establishing a case or controversy when they initiated their suit.

- 10 -

be a flawed program, but they have not alleged that they "personal[ly]" are likely to be victims of it in the future. <u>All. for Hippocratic Med.</u>, 602 U.S. at 381 (citation omitted).

Moreover, to the extent the plaintiffs' complaint suggests that the plaintiffs are specific targets of the record-and-withhold program, the claim is too hypothetical. Recall that the plaintiffs' alleged injury is that their Sixth and Fourteenth Amendment rights are violated when the MSP does not provide recordings to prosecutors in criminal cases brought against them. The plaintiffs set forth no allegations suggesting that they have been "threatened" with an "imminent" prosecution affected by the record-and-withhold program. <u>Susan B. Anthony List</u>, 573 U.S. at 159. Instead, they baldly assert that they "continue to suffer substantial . . . future harm" because of the MSP's actions. Such conclusory allegations do not establish standing. <u>See</u> <u>Wilson</u> v. <u>HSBC Mortg. Serv., Inc.</u>, 744 F.3d 1, 7 (1st Cir. 2014).[2]

---

[2] The plaintiffs argue that their harm is ongoing because their prior criminal cases were dismissed without prejudice. But the plaintiffs have not explained how a dismissal of a case without prejudice makes a revival of the case certainly impending. In any event, the plaintiffs identify no record support for the dismissal of their prior cases without prejudice. Indeed, it appears that those allegations are drawn from filings that the MSP submitted on appeal but that this Court, upon the plaintiffs' motion, struck. We "decline to consider" arguments based on facts that are not in the record. <u>Wallach</u> v. <u>Eaton Corp.</u>, 837 F.3d 356, 377 n.23 (3d Cir. 2016).

Finally, we note that neither the plaintiffs' prior prosecutions nor the alleged widespread nature of the MSP's program offsets the plaintiffs' failure to allege a prospective injury. Background facts like these cannot substitute for allegations of a "sufficiently real and immediate" threat.  City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983) (quoting O'Shea, 414 U.S. at 497); see id. at 105 (holding that a plaintiff had no standing to sue to enjoin the future use of a chokehold even though the plaintiff had previously been subject to the maneuver and its use was a common police practice).  Nothing before us suggests that the plaintiffs are likely to be harmed in the future from the MSP's record-and-withhold program.

The plaintiffs have failed to plead a concrete and imminent injury for which they could receive prospective relief. Accordingly, they lack standing to bring their § 1983 claim against the Superintendent.  We therefore **reverse** the district court's decision denying the Superintendent's motion to dismiss and **remand** the case for further proceedings consistent with this opinion.

**So ordered**.